702 A.2d 831

WALTER AND VERONICA KONIECZNY, PLAINTIFFS–APPEL-
LANTS, v. FRANK MICCICHE AND ANTOINETTE MICCICHE;
JCH HOME INSPECTION SERVICE AND JAMES C. HANSEN,
DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted September 15, 1997—Decided November 6, 1997.

376

Before Judges HAVEY, LANDAU and COLLESTER.

*Dennis A. Maycher*, attorney for appellants.

*Picinich & McClure*, attorneys for respondents Frank and Antoinette Micciche (*William R. McClure*, on the brief).

*Thomas W. Sharlow*, attorney for respondents JCH Home Inspection Service and James C. Hansen (*Thomas W. Sharlow, Jr.*, on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

Plaintiffs, Walter and Veronica Konieczny, appeal from a summary judgment dismissing their complaint against defendants, Frank and Antoinette Micciche (Micciche), JCH Home Inspection Service and James C. Hansen (collectively referred to as Hansen). Micciche, a general contractor, constructed a residential dwelling for plaintiffs. Hansen inspected the dwelling on plaintiffs' behalf before closing of title. In granting summary judgment, the motion judge concluded that plaintiffs' election to proceed with binding arbitration under the New Home Warranty and Builders' Registration Act, *N.J.S.A.* 46:3B-1 to -20, precluded the present action for money damages against both Micciche and Hansen. We affirm in part and reverse in part.

The essential facts are undisputed. On March 31, 1992, plaintiffs entered into a contract with Micciche to purchase a newly-constructed home in Elmwood Park, Bergen County for a price of $320,000. Plaintiffs retained the services of Hansen, who conducted an inspection of the dwelling. Hansen found no significant problems, stating that the house "appears to be of sound construction." Plaintiffs thereafter closed title and took occupancy on July 3, 1992.

On September 26, 1992, plaintiffs submitted a "punch list" of items to Micciche, requesting that the list be addressed pursuant to plaintiffs' New Home Owners' Warranty. Many of the items were cosmetic in nature. However, plaintiffs also complained that the family room bathroom "doorway is sinking," "main beam is dropping," and the doorway frame is "out of plumb."

Dissatisfied with Micciche's response to their letter, on November 23, 1992, plaintiffs submitted a request for dispute settlement with the Department of Community Affairs, Division of Codes and Standards, Bureau of Homeowner Protection (Division). Their request described the principal defect as "main beam dropped . . . causing a multitude of problems over it." They also submitted to the Division the "punch list" previously sent to Micciche, as well as a letter explaining the manner by which the house was "slowly sinking" over the "main beam." Plaintiffs demanded that the builder correct the "crookedness" by jacking up the beam and placing a longer column under it. The Division responded by sending plaintiffs a "Consent to Formal Dispute Settlement" form, and advised plaintiffs that a "neutral third-party dispute settler" would be assigned to the matter "in accordance with the regulations governing new home warranties." The letter also advised plaintiffs that, upon written consent by the homeowner and builder, the dispute settler was empowered to issue a binding award of arbitration covering all defects. Both plaintiffs and Micciche executed the "Dispute Settlement" form and agreed to binding arbitration.

On behalf of the Division, William Montague inspected plaintiffs' dwelling in the presence of Mr. Konieczny, Mr. Micciche and Micciche's attorney. In his certification, Micciche's attorney states that after the inspection, Montague told the parties that certain "problems" needed correction, but there was no evidence that the main basement girder (the "main beam") had deflected.

On January 25, 1993, the written decision rendered by Montague was sent to the parties. As to plaintiffs' principal claim, that the "main beam" had deflected, Montague found:

While girder shows no signs of deflection, a lally column has been placed at center of girder. There is no evidence of any future failure at this time. However, the Builder shall adjust basement door to 1st story to within standards, sec. 5:23–3.5(g)1i. He shall also adjust 1st story bathroom door so as to operate and close.

Montague also directed that Micciche address unrelated claims concerning poor workmanship. The award ordered that Micciche complete the necessary repairs within sixty days and noted that the award was "final and binding."

On January 29, 1993, four days after the written award was issued, plaintiffs, through their attorney, attempted to withdraw from the arbitration proceedings.[1] The Division rejected the request, noting that plaintiffs' filing of a claim against the warranty constituted an election of a remedy under *N.J.S.A.* 46:3B–9.

Plaintiffs thereafter filed the present action in the Law Division against Micciche and Hansen. As to Micciche, plaintiffs seek compensatory and punitive damages, claiming breach of contract, common-law fraud, violations of the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –48, and negligence. As to Hansen, plaintiffs seek damages for his professional negligence in failing to properly inspect the premises and discover the defects existing in the dwelling prior to closing of title. Plaintiffs also allege that Hansen breached their contract and violated the Consumer Fraud Act.

---

[1] Plaintiffs claim that the request to withdraw was made before they received and read the written arbitration award. We view this assertion as immaterial to disposition of the issues before us.

In granting summary judgment to all defendants, the motion judge concluded that plaintiffs' initiation of the binding arbitration procedure under the New Home Warranty and Builders' Registration Act (Act) constituted an election of remedy which barred them from all other remedies in a court of law against both defendants.

## I

We agree with the motion judge that plaintiffs are barred from seeking a judicial remedy against Micciche for damages relating to the "main beam" defect. *N.J.S.A.* 46:3B–9 provides in pertinent part:

> Nothing contained herein shall affect other rights and remedies available to the owner. The owner shall have the opportunity to pursue any remedy legally available to the owner. However, initiation of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies.

Having opted for binding arbitration under the Act, plaintiffs are barred from seeking additional relief against Micciche from the courts to recover damages for defects submitted to the arbitrator, as well as for defects they knew about but did not submit to arbitration. *Spolitback v. Cyr Corp.,* 295 *N.J.Super.* 264, 268–70, 684 *A.*2d 1021 (App.Div.1996); *Rzepiennik v. U.S. Home Corp.,* 221 *N.J.Super.* 230, 237, 534 *A.*2d 89 (App.Div.1987). Moreover, the election of remedies subsumed all of their claims for damages against Micciche, including common law fraud and alleged violations of the Consumer Fraud Act. *Rzepiennik, supra,* 221 *N.J.Super.* at 237, 534 *A.*2d 89. The preclusion arises not only because of the statutory bar under *N.J.S.A.* 46:3B–9, but also based on principles of *res judicata* and collateral estoppel. *Ibid.; Chattin v. Cape May Greene, Inc.,* 216 *N.J.Super.* 618, 634–38, 524 *A.*2d 841 (App.Div.), *certif. denied,* 107 *N.J.* 148, 526 *A.*2d 209 (1987).

Plaintiffs argue that *Rzepiennik* is distinguishable because there the builder apparently took steps to correct the defects found to exist by the arbitrators, 221 *N.J.Super.* at 234, 534 *A.*2d 89, whereas here, plaintiffs rejected the arbitration procedure before Micciche attempted to make the repairs. Plaintiffs point to

*Rzepiennik*'s holding that "[w]e thus find nothing inequitable in the fact that, having opted for arbitration *and having garnered the benefits therefrom,* the Rzepienniks are barred by the warranty ... and *N.J.S.A.* 46:3B–9 from seeking further relief in the courts." *Id.* at 237, 534 *A.*2d 89 (emphasis added). Plaintiffs argue that here, when they agreed to arbitration, they simply elected a "forum" but, since they had not "garnered the benefits therefrom" by having Micciche make the repairs, they received no administrative "remedy" under the Act. Thus, they reason, they never sought to "enforce a remedy" and consequently the statutory bar under *N.J.S.A.* 46:3B–9 is inapplicable. We reject the argument.

*N.J.S.A.* 46:3B–9 states that *"initiation of procedures to enforce a remedy* shall constitute an election which shall bar the owner from all other remedies." (Emphasis added). Sensibly, this language must mean that when a homeowner "initiates" a binding arbitration proceeding, as plaintiffs did here, the homeowner has elected the administrative procedure to "enforce a remedy" relating to defects in new home construction. This interpretation is consistent with the pertinent regulation, *N.J.A.C.* 5:25–3.10, which reads that "[p]ursuant to New Home Warranty and Builders' Registration Act (P.L.1977, c. 467) *the filing of a claim* against the warranty specified by this subchapter shall constitute the election of a remedy and shall bar the owner from all other remedies." (Emphasis added). In this regard, *N.J.S.A.* 46:3B–9 differs from the "complementary" remedies provided under the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–13, which affords both an administrative and Superior Court remedy. *See Aldrich v. Manpower Temp. Servs.,* 277 *N.J.Super.* 500, 504, 650 *A.*2d 4 (App.Div.1994), *certif. denied,* 139 *N.J.* 442, 655 *A.*2d 445 (1995). Unlike *N.J.S.A.* 46:3B–9, under the LAD it is not until a "final determination" is rendered by one forum that the choice becomes preclusive. *See N.J.S.A.* 10:5–27 (*"the final determination* [on a LAD complaint] ... shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned" (emphasis added)).

Moreover, plaintiffs' interpretation is incompatible with the legislative purpose of the election of remedy provision: the waiver of any judicial remedy upon election of a prompt, convenient and cost-saving means of resolving disputes concerning construction defects. Under plaintiffs' reading of the statute, the homeowner would have it both ways. He or she could initiate binding arbitration and, if dissatisfied with the arbitration award, or even if during the proceedings there is a sense that the arbitrator will probably reject the claims, he or she could simply "withdraw" from the proceedings and file for damages in the Law Division because the homeowner had not yet "garnered the benefits" of the award. To permit such unilateral action undercuts the salutary purposes of the election of remedy and procedural bar provision of the Act. A homeowner should not be allowed to avail himself or herself of the arbitration proceeding and unilaterally abort that proceeding in the face of an adverse determination.

## II

We recently held in *Spolitback, supra,* that "[a]n election of remedies that has the effect of barring alternative relief must be knowingly and voluntarily made, . . . especially where the choice is to arbitrate disputes rather than to litigate them." 295 *N.J.Super.* at 270, 684 *A.*2d 1021. *See also Marchak v. Claridge Commons, Inc.,* 134 *N.J.* 275, 282, 633 *A.*2d 531 (1993). We therefore concluded that plaintiffs in that case could not be held to have made a preclusive choice to arbitrate issues "of which they were unaware at the time they submitted known claims for resolution by that procedure." *Spolitback,* 295 *N.J.Super.* at 270, 684 *A.*2d 1021. Only those claims submitted to the arbitrator and those "warranty-covered defects known to plaintiffs" at the time of submission to arbitration were therefore barred by *N.J.S.A.* 46:3B–9. *Ibid.*

Here, on February 10, 1993, sixteen days after the arbitration award was rendered, plaintiffs received a written report from an expert, Thomas V. Ashbahian, an architect and engineer. Ashba-

hian focuses on plaintiffs' "main beam" deflection claim. It is undisputed that this claim was not only known to plaintiffs at the time of the arbitration proceeding, but was submitted to the arbitrator and addressed by him.

However, Ashbahian's report also states that: (1) a second concrete slab was poured in the basement "over the old slab without removal of the defective concrete"; (2) there was a "blatant code violation at the base riser of the basement stair"; (3) an "unacceptable practice" was followed by attaching a wood post to the stair riser; (4) there was a "lack of joist hangers at flush connections"; (5) there was an "excessive amount of drilling [through] floor joists" throughout the floor framing; and (6) he found "substandard" framing throughout the house.

We cannot say that plaintiffs knew about these purported defects in workmanship when they elected to pursue their administrative remedy under the Act. It may be that the defects described by Ashbahian are not of a type reasonably observable by laypersons. Would a layperson know, for example, about the purported "excessive amount of drilling" through the floor joists as a result of their own post-occupancy inspection? Nor can we ascertain with certainty whether or not the defects described by the expert overlap with or are subsumed by plaintiffs' basic complaint concerning the main beam. We therefore remand so that the trial judge may determine, by the standards we enunciated in *Spolitback*, which of the claims against Micciche addressed by Ashbahian are barred by *N.J.S.A.* 46:3B–9 and which are not.

### III

As stated, the motion judge concluded that the election of remedy bar under *N.J.S.A.* 46:3B–9 also precluded plaintiffs' present action in its entirety against Hansen for damages arising from his negligent failure to inspect plaintiffs' residence. In so holding, the judge observed that "[t]he remedy for disputes in HOW arbitration is an exclusive remedy."

■ The election of remedy and preclusive bar under *N.J.S.A.* 46:3B–9 must be read in the context of the entire legislative scheme. The Act authorizes the creation of a new home warranty by rules and regulations and adoption of procedures for the implementation and processing of claims against the builder and, if necessary, against a new home warrant security fund. *N.J.S.A.* 46:3B–3a. The Act imposes liability upon a "builder" of a new home for any defect in the construction of the new home covered by the warranty. *N.J.S.A.* 46:3B–4. A "[b]uilder" is defined as any individual corporation, partnership or other business organizations "engaged in the construction of new homes." *N.J.S.A.* 46:3B–2f. Consequently, the "initiation of procedures to enforce a remedy" under *N.J.S.A.* 46:3B–9, which forecloses the homeowner from any remedy at law, must refer to the enforcement of a remedy solely against a "builder," since no other third party is subject to the warranty provisions. Because Hansen is not a "builder," the election of remedy procedures bar under *N.J.S.A.* 46:3B–9 does not apply to him. The question remains, however, whether there is issue-preclusive effect in Hansen's favor to the HOW arbitrator's determination that the main beam or girder was structurally sound, based on common law principles of collateral estoppel.

■ In appropriate circumstances, arbitration awards may be given collateral estoppel effect in subsequent judicial proceedings. *Nogue v. Estate of Santiago,* 224 *N.J.Super.* 383, 385–86, 540 *A.*2d 889 (App.Div.1988); *Chattin, supra,* 216 *N.J.Super.* at 634–38, 524 *A.*2d 841. In deciding the issue, we have been governed by the factors set forth by the *Restatement (Second) of Judgments* §§ 27, 28 and 83 (1982). *Nogue, supra,* 224 *N.J.Super.* at 386–87, 540 *A.*2d 889; *see also Hernandez v. Region Nine Housing Corp.,* 146 *N.J.* 645, 659–60, 684 *A.*2d 1385 (1996). Arbitration awards, like any administrative determination, should be issue-preclusive "only under certain circumstances." *Nogue, supra,* 224 *N.J.Super.* at 386, 540 *A.*2d 889. The determinations made by the arbitrator or agency are entitled to preclusive effect "if rendered in proceedings

which merit such deference." *Hernandez, supra,* 146 *N.J.* at 660, 684 *A.*2d 1385 (quoting *Ensslin v. Township of N. Bergen,* 275 *N.J.Super.* 352, 369, 646 *A.*2d 452 (App.Div.1994), *certif. denied,* 142 *N.J.* 446, 663 *A.*2d 1354 (1995)). The proceeding must entail the essential elements of adjudication. *See Restatement (Second) of Judgments, supra,* at § 83(2)(a)–(e).

> 'The essential question is whether ... an issue is formulated as it would be in a court and decided according to procedures similar to those of a court.... An issue of fact is so formulated when there is assertion and controversion of the occurrence of a legally significant event.... If an issue has thus been formulated, and if the procedure for resolving it is substantially similar to that used in judicial adjudication, the ... determination of the issue should be given preclusive effect in accordance with the rules of res judicata.'
>
> [*Nogue, supra,* 224 *N.J.Super.* at 386–87, 540 *A.*2d 889 (quoting *Restatement (Second) of Judgments, supra,* at § 83 cmt. b).]

■ A second question, raised here, is whether an arbitration award should have issue-preclusive effect in favor of a defendant who was not a party to the arbitration proceedings. Generally, collateral estoppel permits a defendant who was not a party to an action involving a common plaintiff to use a finding of fact from the prior action to preclude litigation of the issue in a pending case. *Batson v. Lederle Labs.,* 290 *N.J.Super.* 49, 52, 674 *A.*2d 1013 (App.Div.), *certif. granted,* 147 *N.J.* 261, 686 *A.*2d 763 (1996); *Kortenhaus v. Eli Lilly & Co.,* 228 *N.J.Super.* 162, 164, 549 *A.*2d 437 (App.Div.1988). This is referred to as *"defensive* collateral estoppel." *Kortenhaus, supra,* 228 *N.J.Super.* at 164, 549 *A.*2d 437. The modern trend favors relaxation of the traditional rule of mutuality of parties, in favor of a more pragmatic case-by-case approach. *Zirger v. General Acc. Ins. Co.,* 144 *N.J.* 327, 337–38, 676 *A.*2d 1065 (1996). "Generally the question to be decided is whether a party has had his day in court on an issue, rather than whether he has had his day in court on that issue against a particular litigant." *McAndrew v. Mularchuk,* 38 *N.J.* 156, 161, 183 *A.*2d 74 (1962). Ultimately, the court must employ a "discretionary weighing of economy against fairness." *Kortenhaus, supra,* 228 *N.J.Super.* at 165, 549 *A.*2d 437.

Under *Restatement (Second) of Judgments, supra,* § 29, entitled "Issue Preclusion in Subsequent Litigation with Others," a plaintiff, in order to avoid the preclusion bar, must demonstrate that he or she "lacked full and fair opportunity to litigate the issue" in the prior proceeding, or there are "other circumstances justify affording [plaintiff] an opportunity to relitigate the issue." Factors to be considered, as well as those enumerated in *Restatement (Second) of Judgments* § 28, are whether: (1) the prior forum afforded plaintiffs procedural opportunities in the presentation and determination of the issues; (2) plaintiffs could have effected joinder of the present defendant in the prior proceeding; and (3) other compelling circumstances make it appropriate that plaintiffs be permitted to relitigate the issue. *Id.* at § 29(2), (3), (8).

■ Applying the *Restatement* principles, we hold that plaintiffs are collaterally estopped from relitigating against Hansen the arbitrator's determination that the main beam or girder was structurally sound. The only *Restatement* factor favoring plaintiffs' argument against issue-preclusion is that they could not have effected joinder of Hansen in the administrative arbitration proceeding, since Hansen was not subject to the provisions of the Act. *Id.* at § 29(3). However, no New Jersey case has held that this factor is dispositive in deciding the issue-preclusion question. *See Batson, supra,* 290 *N.J.Super.* at 54, 674 *A.*2d 1013. Moreover, that factor has less qualitative weight here, since plaintiffs were not compelled to arbitrate the "main beam" defect issue; they could have sought judicial relief in the first instance naming both Micciche and Hansen as party defendants.

This is not a case where procedural opportunities in the presentation and determination of the "main beam" issue were not available to plaintiffs during the arbitration proceeding. *Restatement (Second) of Judgments, supra,* at § 29(2). Indeed, a comprehensive regulatory scheme has been adopted governing the administrative disposition of claims made by homeowners under the Act. The rules set forth a multitude of performance standards

and define the builder's responsibility to satisfy those standards. *N.J.A.C.* 5:25–3.1 to –3.7. When a homeowner files a Notice of Claim with HOW, and both parties agree to binding arbitration, a qualified arbitrator is appointed, who inspects the subject property and conducts a hearing in accordance with the rules of procedure of the American Arbitration Association. *N.J.A.C.* 5:25–5.5(c)3i(1). As we read the regulations, neither party is foreclosed from presenting expert testimony or written reports in support of their respective positions concerning the alleged defects in construction. The arbitrator is required to make specific findings fixing responsibility, describing the extent of the defect, and setting forth the date by which the defect must be corrected. *N.J.A.C.* 5:25–5.5(c)3i(2). If the written decision requires clarification, either party may request reinstatement of the arbitrator's jurisdiction for that purpose. *Ibid.*

Consequently, measured by the considerations enumerated by the *Restatement (Second) of Judgments* § 29, we are confident that plaintiffs had a full and fair opportunity to litigate the "main beam" issue during the arbitration proceeding. They presented written statements describing their claim. The arbitrator inspected the premises and made written findings. The expert report submitted by Ashbahian on February 10, 1993, after the arbitration award was rendered, was reasonably obtainable prior to the arbitration proceedings. *See Kozlowski v. Smith,* 193 *N.J.Super.* 672, 675, 475 *A.*2d 663 (App.Div.1984). Therefore, they are collaterally estopped from relitigating that issue in the context of proving damages they allegedly suffered arising out of Hansen's negligent inspection.

Plaintiffs, however, are not otherwise foreclosed from pursuing their Law Division action against Hansen to recover damages relating to other purported defects arising out of Hansen's alleged negligent failure to inspect. Because no professional liability expert report has been submitted to us, we do not know the scope of the claim against Hansen, and what alleged damages plaintiffs in fact suffered as a result of his conduct. On remand, the trial

judge should make specific findings, applying the *Restatement* factors, respecting whether other claims are precluded as a result of the arbitrator's factual findings.

We reject Hansen's argument that the entire controversy doctrine bars plaintiffs' action against him. The doctrine's underlying purpose, to require mandatory party joinder, is to assure that "all potentially responsible persons will participate in the original action." *Olds v. Donnelly,* 150 *N.J.* 424, 434, 696 *A.*2d 633 (1997). "Requiring the joinder of all parties with a material interest in a . litigation thus guarantees a complete determination of liability, avoids prejudice to absent parties, and prevents a duplication of lawsuits." *Ibid.* Even if the entire controversy doctrine applies to arbitration proceedings, *see Thornton v. Potamkin Chevrolet,* 94 *N.J.* 1, 6–7, 462 *A.*2d 133 (1983), it cannot bar plaintiffs from asserting their claims against Hansen when he could not have been joined in the HOW arbitration procedure because of statutory constraints.

■ Finally, plaintiffs' argument that defendants waived their right to raise the defense of collateral estoppel is without merit. *R.* 2:11–3(e)(1)(E). Both defendants advanced the doctrine as an affirmative defense in their answers. *See R.* 4:5–4; *Williams v. Bell Tel. Labs., Inc.,* 132 *N.J.* 109, 115, 623 *A.*2d 234 (1993), cited by plaintiffs, is readily distinguishable.

Affirmed in part; reversed and remanded in part for further proceedings.