793 A.2d 25 (2002)
349 N.J. Super. 40
Arthur YAROSHEFSKY and Cheryl Yaroshefsky, Plaintiffs-Appellants,
v.
ADM BUILDERS, INC., Defendant/Third Party Plaintiff-Respondent,
v.
Chester Lakony, Jose Bonzinho, Bonzinho Construction Corp., Inc. and Kablan Plumbing & Heating, Inc., Third Party Defendants, and
Blackstone Company, Inc., Third Party Defendant/ Fourth Party Plaintiff-Respondent,
v.
MI Home Products, Inc. and Walter Stopka, Fourth Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 2001.
Decided March 5, 2002.
*26 Philip Elberg, Newark, argued the cause for appellants (Medvin & Elberg, attorneys; Mr. Elberg and Jeffrey M. Wactlar, on the brief).
Owen T. Hughes, West Orange, argued the cause for third party plaintiff-respondent ADM Builders, Inc. (Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, attorneys; Lawrence C. Weiner, on the brief).
William F. Mueller, Morristown, argued the cause for fourth party plaintiff-respondent Firstsource Northeast Group, Inc., formerly known as Blackstone Company, Inc. (Clemente, Mueller and Tobia, attorneys; Mr. Mueller, of counsel; Lori Anne Fee and Matthew A. Schiappa, on the brief).
Before Judges STERN, EICHEN and PARKER.
The opinion of the court was delivered by STERN, P.J.A.D.
Plaintiffs purchased a new home in Wayne from defendant ADM Builders ("defendant" or "ADM"). Plaintiffs thereafter filed a complaint for breach of warranty and consumer fraud against defendant alleging that the house contained major defects including improperly installed windows, faucets that emitted brown water, depressions in the floor and cracks in the foundation. Plaintiffs appeal the judgment of July 17, 2000 granting summary judgment to defendant and dismissing the complaint "with prejudice" on the grounds that the New Home Warranty and Builders' Registration Act ("Act"), N.J.S.A. 46:3B-1 to -20, barred plaintiffs' suit because they had previously submitted their claims to arbitration.
Plaintiffs argue that submission of their claims to arbitration did not constitute an "election of remedies" under the Act, N.J.S.A. 46:3B-9, because they withdrew their claim and did not sign the arbitrator's "Acceptance of Decision" form. Plaintiffs further assert that their warranty did not clearly indicate that the arbitration procedure was binding. Defendant contends that the initiation of the arbitration proceeding bars any further action irrespective of plaintiffs' withdrawal of the claim or their refusal to sign the acceptance form, and that plaintiffs' new home warranty adequately informed them that initiation of an arbitration proceeding barred any later civil suit.
Plaintiffs also contend that the judge failed to explain why their submission of a claim to arbitration resulted in the dismissal of their complaint which included an allegation under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -106. However, the dismissal of that contention would necessarily flow if they made an "election of remedies."

I.
On March 17, 1995, plaintiffs and defendant entered into a Purchase Agreement for a new home located at 74 Andover Drive in Wayne, New Jersey. The Purchase Agreement, which plaintiffs negotiated with the assistance of an attorney, included the following warranty:
13. Seller's Warranty: The Seller agrees to give the Buyer certain warranties concerning construction of the Dwelling as follows:
(a) The Seller warrants the construction of the Dwelling in accordance with the provisions of the New Jersey Home Warranty and Builders' Registration Act, N.J.S.A. 46:3B-1 et seq. The Seller will enroll the Dwelling in an approved warranty security plan at or promptly *27 after closing. The Seller will pay all requisite fees and premiums for enrollment and coverage, provided that the Buyer will be responsible for any deductibles which are a part of the warranty security plan.
On July 24, 1995, plaintiffs received a "Certificate of Participation" in a "New Home Warranty Plan" ("the policy") administered by the Home Buyers Warranty Corporation ("HBW"). The policy became effective on October 13, 1995, the date of closing. Attached to the "Certificate of Participation" was a letter which stated that the policy was "in compliance with the New Jersey New Home Warranty and Builders' and Registration Act, N.J.S.A. 46:3B-10 et seq. [sic]." The policy included a provision setting forth the procedure the plaintiffs should follow in the event that they discovered defects in the home. It provided:
IV. Conciliation and Arbitration
....
If the Homeowner(s) and Builder do not reach an agreement, if the [B]uilder does not make the repairs promptly or if the Homeowner is not satisfied with any repair of defects made by the [B]uilder, either the Builder or Homeowner(s) may request an impartial third-party arbitration with a Home Buyer Warranty approved arbitration service which will be conducted in accordance with their rules and regulations. The forms for requesting arbitration will be provided by the Home Buyers Warranty Service Office. In accordance with the Act and the Regulations, the Homeowner(s) has the right to pursue remedies other than conciliation and arbitration; however, election of other remedies shall bar the Homeowner(s) from pursuing the same claim under this warranty. (Emphasis added.)
After discovery of the alleged defects and defendant's failure or refusal to correct the defects, plaintiffs hired a plumber who discovered that the brown water was caused by nails left in pipes during construction. They also alleged "numerous [other] construction defects associated with the house."
On June 2, 1996, plaintiffs filed a complaint with HBW, which scheduled an arbitration for August 6, 1996 at plaintiffs' home. On that date, the arbitrator, plaintiffs, plaintiffs' attorney, ADM's President Alex Horowitz, and plaintiffs' expert, Paul Rusianiak, a former Wayne Building Inspector, appeared for the hearing.[1]
The circumstances surrounding the arbitration hearing are in dispute. In a certification, plaintiffs' counsel states that the arbitrator advised plaintiffs that "the arbitration procedure did not provide a remedy for the most egregious defects in the home ... and that he did not have the ability to order complete relief." Counsel further certified that the arbitrator advised him to file a complaint "in Court." Prior to announcing the intention to withdraw the request for arbitration and file a lawsuit, plaintiffs' counsel stated that he discussed the issue with the arbitrator, Horowitz, and ADM's lawyer, and that everyone understood the withdrawal was "without prejudice."
In a certification submitted in support of ADM's motion to dismiss the complaint, Horowitz stated that the hearing began with the arbitrator inspecting the first few items on plaintiffs' list of defects. Thereafter, plaintiffs "announced that they were *28 withdrawing their Demand for Arbitration" and were filing a lawsuit.
Plaintiffs filed a "Withdrawal Notice" dated August 6, 1996. On August 15, 1996, the arbitrator issued an arbitration "Award" in which he concluded that ADM was not responsible for repairing any defects because plaintiffs "with[drew]" the demand for arbitration.
On August 1, 1997, plaintiffs filed their complaint in the Law Division. On November 13, 1997, ADM filed an answer generally denying the allegations in the complaint and asserting six affirmative defenses, including that plaintiffs' claim was "barred by their election of remedy under the Builders[`] Warrantee Program."
ADM filed a motion to dismiss plaintiffs' complaint on the grounds that plaintiffs' initiation of arbitration proceedings precluded a subsequent action in the Law Division, notwithstanding the withdrawal of the arbitration complaint. Plaintiffs claimed that arbitration was not binding, however, because (1) the word "binding" did not appear in the policy; (2) the policy allowed the plaintiff to accept or reject an arbitrator's award; and (3) the policy language did not state that the decision to initiate arbitration prohibited a lawsuit, but only stated that if plaintiffs filed a lawsuit they were barred from seeking arbitration.
On August 6, 1999, the Law Division determined that plaintiffs' initiation of arbitration proceedings was an election of remedies under the Act which barred the common law action. However, the judge concluded that plaintiffs' case should be remanded back to the arbitrator to give plaintiffs the right to complete the remedy they initially pursued:
This court does not wish to effectuate a harsh remedy with regard to this homeowner[;] however this court does wish to honor and enforce the spirit and the intent of the statute which is to provide the homethe homeowner with their choice of a forum to present their claims and to utilize arbitration and mediation to preserve judicial time and economy.
For this reason the court is going to leave open plaintiff[s'] complaint that has been filed in the Law Division, remand this matter to arbitration and reserve for final hearing in this matter those claims of the homeowner that the arbitrator determines are not the subject of the homeowner warranty.
The judgment of August 6, 1999 provided:
This matter is remanded back to the Arbitrator for a complete hearing on the merits and for a final decision on the claims listed in [plaintiffs'] Schedule of Construction Defects in their Demand for Arbitration.
Plaintiffs did not appeal or seek leave to appeal this ruling.
The second arbitration proceeding took place on December 8, 1999. At the hearing, the arbitrator heard testimony from plaintiffs, Horowitz, and third party defendant Chester Lakony, the framing subcontractor. The arbitrator also reviewed pictures and videotapes submitted by plaintiffs. An inspection of the house was conducted on April 6, 2000. On April 13, 2000, the arbitrator issued an award in which he concluded that ADM was responsible only for reinstalling the windows in the master bedroom, center rear bedroom and rear right bedroom. The arbitrator determined that ADM was not responsible for the remainder of the claimed defects because plaintiffs' alteration or additions to the home were excluded under the policy, which provided, in section VI paragraph (J), that the warranty does not apply to "[c]hanges, alterations, or additions made to the home by anyone after initial occupancy, except those performed *29 by the builder as his obligation under this program." The plaintiffs made repairs to the house pending resolution of their claims.
The arbitration service mailed plaintiffs an "Acceptance of Arbitrator's Award" form, but they declined to execute it. On May 23, 2000, plaintiffs filed a motion to restore their complaint to the active trial calendar, and defendant cross-moved for an order dismissing the complaint with prejudice.
Plaintiffs argued that they never had an arbitration on the merits and that the arbitrator never addressed their claims because he concluded that plaintiffs' repairs fell within the policy exclusions. Plaintiffs also repeated their previous argument that the initiation and withdrawal of the arbitration complaint did not constitute an election of remedies which would bar a subsequent suit. Defendant argued that the plaintiffs made a binding decision to arbitrate their complaints and should not be allowed to proceed in the Law Division simply because they were unhappy with the result.
The Law Division ruled for defendant:
Dissatisfaction with an arbitration award is not grounds for litigation. Under the statutory directives and the cases that have enforced the concept of arbitration there has to be fraud, mistake of law or some other gross error on the part of the arbitrators ... as grounds for having judicial review of an arbitration award.
This court made it very pla[i]n in its August [6,] 1999 decision that arbitration was the proper forum. Plaintiffs have plaintiffs could have elected to have appealed this court's decision in August of 1999. To come back now and seek reconsideration is inappropriate and not consistent with our court rules.
As noted, the judgment dismissing plaintiffs' complaint "with prejudice" was entered on July 17, 2000.

II.
The Act requires all new home builders to register with the Department of Community Affairs. N.J.S.A. 46:3B-5. In order to register, the builder must participate in the Department's Warranty Security Fund or an alternate warranty security program approved by the Department. Ibid. Both are designed to protect new home buyers by providing a means to correct deficiencies by builders. N.J.S.A. 46:3B-7. The Act contains an election of remedies provision, N.J.S.A. 46:3B-9, which provides:
Nothing contained herein shall affect other rights and remedies available to the owner. The owner shall have the opportunity to pursue any remedy legally available to the owner. However, initiation of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies. Nothing contained herein shall be deemed to limit the owner's right of appeal as applicable to the remedy elected.
The Act's implementing regulations state:
Pursuant to New Home Warranty and Builders' Registration Act (P.L.1977, c. 467) the filing of a claim against the warranty specified by this subchapter shall constitute the election of a remedy and shall bar the owner from all other remedies. Nothing herein shall be deemed to limit the owner's right to elect other remedies except that such election shall bar the owner from pursuing the same claim under the warranty specified in this subchapter and in accordance with the procedures related hereto. For the purpose of this section, election of other remedies shall mean *30 the filing of a complaint, counter-claim, cross-claim or third party complaint in any court that alleges matters covered by the warranty in particular or unworkmanlike construction in general.

[N.J.A.C. 5:25-3.10.]
Thus, under the Act, a new home buyer may seek recovery through one of two "mutually exclusive" mechanisms, either (1) conciliation or arbitration, or (2) filing a lawsuit. Marchak v. Claridge Commons, Inc., 134 N.J. 275, 280, 633 A.2d 531 (1993).
In Konieczny v. Micciche, 305 N.J.Super. 375, 378, 702 A.2d 831 (App.Div.1997), plaintiffs purchased a new home from the contractor.[2] Approximately six months later, plaintiffs requested that defendant repair several defects in the home pursuant to their new homeowners' warranty. Ibid. Dissatisfied with defendant's response to their request, plaintiffs requested "dispute settlement" with the Department of Community Affairs. Ibid. The Department sent plaintiffs a "Consent to Formal Dispute Settlement" form which advised plaintiffs that, upon consent of the parties, the dispute settler would issue a binding decision. Ibid. The parties agreed to this arrangement. Ibid. Four days after the dispute settler issued his decision, plaintiffs "attempted to withdraw from the arbitration proceedings." Id. at 379, 702 A.2d 831. Thereafter, plaintiffs filed a suit in the Law Division against the builders, asserting claims for breach of contract, fraud, and violations of the Consumer Fraud Act. Ibid. The trial court awarded summary judgment to defendant because plaintiffs' initiation of arbitration proceedings constituted an election of remedy under the Act. Id. at 380, 702 A.2d 831.
On appeal, the plaintiffs argued that the agreement to arbitrate was merely a choice of forum, and since defendant made no repairs, they never received a remedy under the Act which would bar a future suit. Id. at 381, 702 A.2d 831. Judge Havey, writing for this court, held that, under N.J.S.A. 46:3B-9 and principles of res judicata, plaintiffs' decision to begin arbitration proceedings barred the filing of a subsequent civil suit for damages resulting from defects presented to the arbitrator, or those that could have been submitted to the arbitrator. Id. at 380, 702 A.2d 831. Judge Havey's opinion also concluded that plaintiffs' election of a remedy also "subsumed all of their claims for damages..., including common law fraud and alleged violations of the Consumer Fraud Act." Ibid. The court found that the language of N.J.S.A. 46:3B-9, which states that "initiation of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies," and N.J.A.C. 5:25-3.10, which provides that "the filing of a claim against the warranty specified by this subchapter shall constitute the election of a remedy and shall bar the owner from all other remedies," "must mean that when a homeowner `initiates' a binding arbitration proceeding... the homeowner has elected the administrative procedure to `enforce a remedy' relating to defects in new home construction." Id. at 381, 702 A.2d 831 (emphasis in original).[3] Finally, Judge Havey wrote:

*31 Plaintiffs' interpretation [of the Act] is incompatible with the legislative purpose of the election of remedy provision: the waiver of any judicial remedy upon election of a prompt, convenient and cost-saving means of resolving disputes concerning construction defects. Under plaintiffs' reading of the statute, the homeowner would have it both ways. He or she could initiate binding arbitration and, if dissatisfied with the arbitration award, or even if during the proceedings there is a sense that the arbitrator will probably reject the claims, he or she could simply "withdraw" from the proceedings and file for damages in the Law Division because the homeowner had not yet "garnered the benefits" of the award. To permit such unilateral action undercuts the salutary purposes of the election of remedy and procedural bar provision of the Act. A homeowner should not be allowed to avail himself or herself of the arbitration proceeding and unilaterally abort that proceeding in the face of an adverse determination.

[Id. at 382, 702 A.2d 831.]
Defendant relies on Konieczny which appears to support the trial judge's conclusion here that plaintiffs' initiation of, and subsequent withdrawal from, arbitration constitutes an election of remedies under the Act. However, Konieczny deals with an arbitration under the State Plan and not under the warranty provided by an approved private plan authorized by the statute. The "request for dispute settlement" was filed with the Department of Community Affairs, the parties "agreed to binding arbitration," and the Department assigned a "dispute settler" to the matter, who inspected the dwelling and rendered a decision. Id. at 378-79, 702 A.2d 831.
In Oak Trail Road Homeowners Assoc. v. The Royal Mile Corp., 246 N.J.Super. 590, 592-93, 588 A.2d 430 (App.Div.1991), the homeowners had received an alternate warranty from defendant Home Owners Warranty Corporation ("HOW"), and the homeowners had filed a complaint in the Law Division to enforce the warranty. HOW moved for summary judgment raising the election of remedies provision of the warranty policy. Id. at 592, 588 A.2d 430.
Under the HOW policy, in the event of a dispute between the builder and the owner, the owner was to file a "Request for Warranty Performance" with HOW. The policy provided:
If your Builder disagrees with your complaint, HOW will arrange for informal dispute settlement between you and your Builder by a neutral third party. Your builder will be bound by such third-party decision upon HOW's receipt of your "Acceptance of Decision" (see below).
....
Acceptance of Decision. You must sign and return to HOW at the mailing address shown on the Declarations page within 45 days after the date of decision an "Acceptance of Decision" form by which you agree to accept the decision as to those matters decided in your favor. Your builder will then be bound to perform as required in the decision. Neither HOWIC nor your Builder is responsible for damages caused or made worse by your delay in accepting the decision.
....
Under the Magnuson-Moss Warranty Act and under this Warranty, you may not file suit against your Builder until your claim has been submitted to informal dispute settlement and a decision has been reached or you have waited 40 days for a decision following your submission of a Request for Warranty Performance, *32 whichever comes first. State or federal laws may permit you to file suit without waiting, despite this paragraph.

[Oak Trail, supra, at 594-95, 588 A.2d 430.]
The court explained that under this provision, "a homeowner may invoke the HOW warranty and, if dissatisfied with the result, may thereafter institute litigation against the builder." Oak Trail, supra, at 595, 588 A.2d 430. Judge (now Justice) Long specifically pointed out, that "[t]his scheme differs from N.J.S.A. 46:3B-9, [and the regulations under N.J.A.C. 5:25-3.10] which govern[ ] the state plan and which provide[ ] that the invocation of a remedy bars the homeowner from all other remedies." Id. at 595, 588 A.2d 430 (emphasis added).
Oak Trail must be understood in context because the HOW plan was approved by the Commissioner of Insurance prior to the adoption of the Act, and "any conflict between the policy and the statute had to be resolved by resort to the grandfather clause in the statute," id. at 595, 588 A.2d 430, which provides:
[A]ny new home warranty insurance program approved by the Commissioner of Insurance prior to the adoption of this act shall: (1) Constitute an approved alternate new home warranty security program and shall be deemed in accordance with this section and in compliance with this act in the form and substance heretofore approved by the Commissioner of Insurance, (2) not be subject to any rules and regulations adopted by the Commissioner of the Department of Community Affairs pursuant to this act when such rules and regulations are in conflict with said previously approved new home warranty program.

[N.J.S.A. 46:3B-8.]
As a result of this statutory provision, Judge Long concluded that "to the extent that this case presents an issue with respect to which the HOW policy differs from the statute, it is the HOW policy which governs the rights of the parties." Oak Trail, supra, at 596, 588 A.2d 430.
However, in Postizzi v. Leisure & Technology, Inc., 235 N.J.Super. 285, 289-90, 562 A.2d 232 (App.Div.1989), discussed in Oak Trail, supra, at 596, 588 A.2d 430, the homeowners, after participating in an informal dispute settlement under their alternate warranty policy, brought an action for breach of their warranty policy against HOW, also the administrator of the warranty in that case. The Law Division granted summary judgment to HOW, finding that the homeowner's action was barred under N.J.S.A. 46:3B-9, the Act's election of remedies provision. Postizzi, supra, at 286, 562 A.2d 232.
On appeal, we held that the homeowners' action was not barred under N.J.S.A. 46:3B-9 because the homeowners "had good reason to believe that participation in the informal conciliation proceeding conducted by the dispute settler did not foreclose them from further civil proceedings if they were displeased with any of his findings." Id. at 289, 562 A.2d 232. First, the informal conciliation rules "furnished to the [homeowners] by the builder plainly advised them that they may pursue other legal remedies for those items which the dispute settler found were not the builder's responsibility." Ibid.[4] Second, the warranty provided in italics as follows:

*33 Under the Magnuson-Moss Warranty Act and under this Limited Warranty, suit may not be filed against the Builder until the claim has been submitted to informal dispute settlement and a decision has been reached or a ... decision following the submission of a Request for Performance, which ever comes first. State or federal laws may permit filing of suit without waiting, despite this paragraph.

[Ibid. (emphasis added).]
As a result of these provisions, we noted that "[n]owhere does the warranty policy suggest that N.J.S.A. 46:3B-9 and N.J.A.C. 5:25-3.10 will bar a subsequent civil action by a homeowner who disagrees with the conclusions of the dispute settler." Ibid. As such, HOW "may not renounce the very language of their insurance contract advising plaintiffs of their right to bring a civil action if dissatisfied with the findings of the dispute settler." Ibid. Judge Stein explained that in order for the policy to have triggered the election of remedies provisions of N.J.S.A. 46:3B-9 and the regulation thereunder, N.J.A.C. 5:25-3.10, which deem it an election upon the filing of any claim against the warranty, there had to have been a "reference [to such provisions] in the HOW warranty." Id. at 290, 562 A.2d 232. Therefore, the court declined to
rescue its warranty program from its misleading language by incorporating inferentially the provisions of N.J.S.A. 46:3B-9 and N.J.A.C. 5:25-3.10 into its warranty policy. We refuse to reshape this square peg to fit into a round hole. This is a contract of insurance required by statute and designed to protect new homeowners. It should not be construed to deprive an unwitting new home purchaser of the right to elect between seeking relief under the New Home Warranty program or bringing an independent civil action.

[Id. at 290-91, 562 A.2d 232.]
See also Haberman v. West Saddle Dev. Corp., 236 N.J.Super. 542, 566 A.2d 552 (App.Div.1989).
Subsequently in Marchak v. Claridge Commons, Inc., supra, a case involving "an alternative program approved pursuant to N.J.S.A. 46:3B-8," the Supreme Court held that under the Act "[a] buyer may submit a claim to litigation or arbitration, but not both." 134 N.J. at 280, 633 A.2d 531. The Court noted, however, that "[n]otwithstanding the Act's recognition of the owner's right to pursue either remedy, [the] parties remain free to limit those remedies by mutual agreement." Id. at 281, 633 A.2d 531. However, the Court made clear that a clause which provides for arbitration "as the exclusive remedy" and deprives a homeowner of "access to the courts" must clearly and unequivocally do so. Id. at 282, 633 A.2d 531. See also Spolitback v. Cyr Corp., 295 N.J.Super. 264, 270, 684 A.2d 1021 (App.Div.1996) (election of remedies clause did not preclude homeowners from litigating claims unknown to them at the time they submitted the matter to arbitration).
We read the cases to provide that the policy language, under a private plan, controls, and the language in this policy does not make clear that a common law action could not be commenced after an arbitration was initiated and withdrawn.
Here, the policy provides that "[i]n accordance with the Act and the Regulations, the Homeowner(s) has the right to pursue remedies other than conciliation and arbitration; however election of other remedies shall bar the Homeowner(s)from pursuing the same claim under this warranty." (Emphasis added.) Defendants argue that this language incorporates N.J.S.A. 46:3B-9 and pertinent regulations which have *34 been interpreted to bar a Law Division action after an arbitrator has issued an award despite the homeowner's decision not to accept it. Plaintiffs, on the other hand, argue that there is nothing in the policy that suggests that their participation in the arbitration would bar further Law Division action. We agree with plaintiffs.
N.J.A.C. 5:25-4.2, the regulation governing "private alternate new home warranty security plans," requires that:
Private plans shall provide for written notice to the owner concerning warranty coverage and the claims and dispute settlement procedures utilized, expressing in plain language the scope, applicability and standards for the warranty and the forms, procedures and processes involved in making a claim under the warranty. The form and content of the written notice shall be approved by the Department.

[N.J.A.C. 5:25-4.2(f), (emphasis added).]
The language in the warranty in this case is at best unclear, and could be read by plaintiffs to bar an arbitration after commencement of a common law action, but not vice versa. Our Supreme Court has recently emphasized that statutory rights cannot be waived by agreements to arbitrate unless the agreement to do so is clear and unambiguous. Garfinkel v. Morristown Obstetrics & Gynecology Assoc., 168 N.J. 124, 132, 773 A.2d 665 (2001). The same principle is applicable here.
Moreover, there was no suggestion when the matter was remanded for arbitration that plaintiffs could not pursue whatever remedies they had after the arbitration was completed. The complaint was not dismissed by the order of August 6, 1999. Rather, the matter was "remanded back" to the arbitrator, and the judge expressly stated she was "going to leave open plaintiffs' complaint" and "reserve for final hearing" claims the arbitrator determined were not covered by the warranty. See also N.J.A.C. 5:25-4.2(3) which requires notice of the right to appeal following the arbitration under a private plan. Accordingly, the August 6, 1999 order did not constitute a final judgment requiring plaintiffs to appeal from the determination of that day to the effect that plaintiffs elected to arbitrate the dispute.
The judgment is reversed and the matter is remanded for further proceedings in the Law Division not inconsistent with this opinion.
NOTES
[1] In a certification submitted in opposition to defendant's first motion to dismiss the complaint, plaintiffs' counsel states that ADM's attorney was not physically present at the arbitration, but that he and Horowitz communicated with him by telephone.
[2] The home inspector was also a defendant. The plaintiffs were permitted to pursue their Law Division action based on the negligent inspection except to the extent barred by collateral estoppel based on the arbitration.
[3] We compared this language with the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-13 and -27, which provides an administrative and Superior Court remedy, with the choice between the two becoming binding only when a "final determination" is rendered by the chosen forum. Ibid.
[4] The rules provided "[t]he homeowner may have, and wish to exercise other legal remedies on those items where the builder was not found responsible under the Limited Warranty." Id. at 288, 562 A.2d 232.