949 A.2d 279 (2008)
401 N.J. Super. 99
Alexander IVASHENKO and Caroline Ivashenko, Plaintiffs-Appellants,
v.
KATELYN COURT COMPANY, INC., a New Jersey Corporation; Russell Weber, Jr.; Russell Weber, Sr.; Thomas J. Fitzpatrick; AED Associates, Defendants-Respondents.
No. A-6532-06T3
Superior Court of New Jersey, Appellate Division.
Argued April 22, 2008.
Decided May 30, 2008.
*280 Sam Maybruch, Hazlet, argued the cause for appellants (Maybruch & Zapcic, attorneys; Mr. Maybruch and Matthew R. Goode, on the brief).
Chris W. Kemprowski, Somerset, argued the cause for respondents, Katelyn Court Company, Inc., Russell Weber, Jr. and Russell Weber, Sr. (Law Offices of Michael C. Urciuoli, attorneys; Mr. Kemprowski, on the brief).
Richard W. Gaeckle, New Brunswick, argued the cause for respondents, Thomas J. Fitzpatrick and AED Associates (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Andrew J. Carlowicz, Jr., of counsel; Mr. Gaeckle, on the brief).
Before Judges SKILLMAN, WINKELSTEIN and LeWINN.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
In this appeal, we are asked to decide if the election of remedies provision of the New Home Warranty and Builders' Registration Act, N.J.S.A. 46:3B-1 to -20 (the *281 Act), and its concomitant regulations, N.J.A.C. 5:25-1.1 to -5.5 (the regulations), bar plaintiffs' lawsuit against the builder and architects of their home. The trial court dismissed plaintiffs' complaint on summary judgment on the grounds that the lawsuit was barred because plaintiffs had previously sought relief under the Act. On appeal, plaintiffs argue that their election to proceed under the Act was not knowing and voluntary, and thus the Act's election of remedies provisions did not preclude their Superior Court action. We find merit to plaintiffs' argument, and accordingly, we reverse the summary judgment and reinstate their complaint.
For purposes of the summary judgment motion, the material facts are not contested. In December 1998, plaintiffs entered into a contract with defendant Katelyn Court, owned by defendants Russell Weber, Sr. and Russell Weber, Jr. (collectively, the builder), to purchase a newly constructed home in Old Bridge. Defendant Thomas J. Fitzpatrick, an architect, employed by defendant AED Associates (collectively, the architects), prepared the plans. The home was substantially constructed in 2000. After plaintiffs moved into the home that December, they provided the builder with a punchlist of items that needed repair, one of which was the rear foundation wall, which plaintiffs described as having "three wet spots" and "bowing in."
In May 2001, plaintiffs filed their first New Home Warranty (HOW) claim, asserting that the rear foundation wall in the basement of their home was defective. Because the parties did not agree to arbitration, Terence Luckie, a claims analyst of the Bureau of Homeowner Protection (the Bureau), met with plaintiffs and Russell Weber, Jr. in July 2001 at plaintiffs' home. See N.J.A.C. 5:25-5.5(c)3ii. Luckie requested that the builder provide the specifications that the architects had prepared concerning the repair of the rear foundation wall. Those specifications had been previously submitted to the Old Bridge Township Building Department after the foundation wall was pushed in when a piece of equipment struck it during construction. The specifications stated, in part, that the "rear block wall [had] been pushed in . . . by machine/equipment grading around foundation[, and the] [j]oints shall be watched for any future movement. The issue will be address[ed] if needed in the future." At the time they filed the first HOW warranty claim, plaintiffs were unaware of the incident and that the architects had submitted specifications to repair the wall.
Also following the meeting, plaintiffs provided Luckie with a report prepared by their engineer, Andrew Marino. The report stated, in part, that "[b]ased on the lean noted in the wall (up to 3 inches) and inward buckling, as well as water penetration, horizontal cracking and evidence of ongoing movement, it is recommended that the wall be reconstructed with new reinforced pilasters, properly tied at the top and bottom."
On September 5, 2001, the Bureau issued its decision. As to plaintiffs' claim that the rear foundation wall was bowing, the decision stated:
Repairs were made to the rear basement wall according to specifications provided by Builder's Architect and approved by the Construction Official prior to the issuance of the Certificate of Occupancy. At the time of inspection there was no sign of failure or evidence of a Major Structural Defect as defined in N.J.A.C. 5:25-1.3 & 3.7. . . . The homeowner shall monitor the wall throughout the warranty period for signs of movement and/or cracking, and notify the Builder and the New Home *282 Warranty Program . . . by phone and in writing should the wall exhibit signs of movement or failure. Therefore at this time this claim is DENIED.

[(emphasis added).]
After receiving the decision, plaintiffs filed a second notice of claim and request for dispute settlement. Without addressing the merits of the claim as it pertained to the foundation wall, on October 17, 2001, an arbitrator denied the claim as duplicative of the first HOW warranty claim.
Over the next two years, the foundation wall continued to deteriorate. It developed a large horizontal crack, seven and one-half feet off of the floor, approximately one-eighth to one-quarter of an inch in width, and roughly thirty feet long. Several vertical cracks connected to the horizontal crack, with one crack passing through the foundation to the exterior of the wall. The tops of the pilasters, vertical structural columns, had separated from the foundation, with additional bowing of the rear wall. Consequently, in February 2004, plaintiffs filed another HOW warranty claim. The Bureau scheduled a hearing for July 13, 2004, at plaintiffs' home.
Before the hearing date, Marino reinspected the foundation wall. In a June 15, 2004 inspection report, he stated:
In August of 2001, I noted cracks between the rear foundation wall and attached pilasters. These cracks have further developed into large separations. . . . The pilasters have not been secured at the top as previously recommended and as anticipated, the wall has continued to move inward. . . . Most notably, large horizontal cracks have developed in the wall. . . . These cracks which exceed 1/4 inch [in] thickness . . . serve to further weaken this wall from its prior condition. In this area the wall has less inherent strength. . . . The two wythes[[1]] of block are now beginning to delaminate . . . toward the upper center of the wall . . . and I am concerned that there may be no steel ties or inadequate ties between the wythes of block. Sections of mortar previously holding the wythes of block together are loose and easily removed by hand. The load from the home above, in those areas, is being primarily carried by the 8 inch wall alone. If unreinforced, the 8 inch block is drastically undersized for a wall of this height. . . .
. . . [T]he stability of this wall is extremely questionable. Continued inward buckling of the wall can result in vertical shortening of the wall which will result in downward movement of and ongoing damage to the structure above. The wall is at a point where a minimal amount of further inward movement could result in failure of the wall and structure above. Steps should be taken to reinforce the wall immediately until a permanent repair can be completed.
After receiving Marino's report, plaintiffs inspected the files of the Township Building Department where they discovered a Notice of Unsafe Structure that had been issued on June 1, 2000. The notice stated that an "unsafe condition/imminent hazard has been found to exist . . .: Cracks in foundation and excess of two-inch lean in rear foundation wall." Prior to viewing the file, plaintiffs had no knowledge of the Notice of Unsafe Structure.
In a letter dated July 9, 2004, Marino advised plaintiffs that the wall continued to move inward, the July 2000 repairs had not resolved the problem, and "the overall *283 construction of the wall is deficient." Consequently, prior to the scheduled July 13, 2004 hearing, plaintiffs withdrew the 2004 claim.
In June 2005, plaintiffs filed a complaint charging the builder with negligent construction, breach of the implied warranty of habitability, breach of contract, misrepresentation, and a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -167. Plaintiffs alleged negligence by the architects in the initial design of, and subsequent repairs to, the foundation wall.[2]
During discovery, plaintiffs deposed Alfred Polluzzi, a draftsman, who was a partner in AED. Polluzzi testified that after he had been told that a bulldozer struck and cracked the foundation wall, he did not inspect the inside of the home because the builder did not direct the architects to go inside. He relied instead on what the builder told him with regard to the crack in the foundation. Polluzzi further testified that after the bulldozer accident, the foundation wall was subject to movement. He stated that when the ground next to the wall became wet, the wall could move because at fifteen courses in height, it was too high.
Both the builder and the architects moved for summary judgment. The trial court ruled that because plaintiffs had initially elected to proceed under the Act, they were precluded by the election of remedies provisions from bringing the court action. The court also granted the architects' motion, primarily on the grounds that even though the architects were not parties to the HOW warranty proceedings, plaintiffs were collaterally estopped from relitigating whether the foundation wall was defective.
The Act and the regulations require that new homes conform to minimum construction and quality standards, and provide new home purchasers with warranty protection. N.J.S.A. 46:3B-7.1.
The Act includes an election of remedies provision:
Nothing contained herein shall affect other rights and remedies available to the owner. The owner shall have the opportunity to pursue any remedy legally available to the owner. However, initiation of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies. Nothing contained herein shall be deemed to limit the owner's right of appeal as applicable to the remedy elected.
[N.J.S.A. 46:3B-9 (emphasis added).]
The attendant regulation spells out in more detail the requirement that a homeowner elect whether to proceed under the Act or in court:
[T]he filing of a claim against the warranty specified by this subchapter shall constitute the election of a remedy and shall bar the owner from all other remedies. Nothing herein shall be deemed to limit the owner's right to elect other remedies except that such election shall bar the owner from pursuing the same claim under the warranty specified in this subchapter and in accordance with the procedures related hereto. For the purpose of this section, election of other remedies shall mean the filing of a complaint, counter-claim, cross-claim or third party complaint in any court that alleges matters covered by the warranty in particular or unworkmanlike construction in general.
[N.J.A.C. 5:25-3.10.]
*284 The regulations also preclude a homeowner from filing more than one claim for the same defect, but permit a homeowner to file a new claim "if new facts arise which could not previously have been known with reasonable diligence." N.J.A.C. 5:25-5.5(b)3ii.
We examined the reach of the election of remedies provisions in Konieczny v. Micciche, 305 N.J.Super. 375, 380, 702 A.2d 831 (App.Div.1997), where we concluded that the homeowners' initiation of arbitration proceedings under the Act barred them from seeking additional relief in court for defects that had been submitted to the arbitrator, as well as for defects that the homeowners knew about but did not submit to the arbitrator. The language of N.J.S.A. 46:3B-9"initiation of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies"means that "when a homeowner `initiates' a binding arbitration proceeding . . . the homeowner has elected the administrative procedure to `enforce a remedy' relating to defects." Konieczny, supra, 305 N.J.Super. at 381, 702 A.2d 831. This interpretation is consistent with the legislative purpose of the election of remedies provision, which balance "the waiver of any judicial remedy [with the] election of a prompt, convenient and cost-saving means of resolving disputes concerning construction defects." Id. at 382, 702 A.2d 831. Thus, the election of remedies provisions subsume all of the homeowners' claims of which they were aware when they filed their claim under the Act, including claims for common-law fraud and violations of the Consumer Fraud Act, even if the homeowners did not raise those claims with the arbitrator. Id. at 380, 702 A.2d 831.
Plaintiffs do not disagree with these general principles, but instead assert that the election of remedies provisions do not apply to them because they did not initiate their HOW warranty claims with full knowledge of the damage to their home. They rely on our decision in Spolitback v. Cyr Corp., 295 N.J.Super. 264, 270, 684 A.2d 1021 (App.Div.1996), where we held that a homeowner's election of remedies, which would effectively bar alternative relief,
must be knowingly and voluntarily made, especially where the choice is to arbitrate disputes rather than to litigate them. Without a realistic opportunity to understand the nature and scope of the particular issues to be addressed, a party cannot be said to have the requisite basis for making a knowing and voluntary waiver of available remedies for resolution of those issues.
[(citations omitted).]
The record supports plaintiffs' argument. At the time they filed the first HOW warranty claim, they were unaware that a bulldozer had struck the foundation wall while the home was being constructed. Nor were they aware that the Township building inspector had issued a Notice of Unsafe Structure as a result of the accident. The builder had not informed plaintiffs of the accident or the unsafe structure notice. Neither had the builder informed plaintiffs that the architects had proposed a plan to fix the wall following the accident without having inspected for damage inside the home, but had prepared specifications based substantially on information provided by the builder.
Even at the time plaintiffs filed their 2004 HOW warranty claim, they were not aware of the unsafe structure notice or of many material facts related to the damage to and repair of the foundation wall. When they discovered the information, they withdrew that claim before it was adjudicated by the Bureau.
*285 Given these circumstances, plaintiffs were deprived of a realistic opportunity to understand the nature and scope of the potential problems facing them when they elected to proceed under the Act rather than seek relief in court. Plaintiffs' election was not made knowingly or voluntarily.
We are mindful that information concerning the bulldozer accident, and the unsafe structure notice, were available to plaintiffs before they initiated the first HOW warranty claim. A search of the Township's building department records would have provided plaintiffs with that information. We are not persuaded, however, that it was plaintiffs' obligation to check those records in the absence of, at the very least, knowledge that the bulldozer accident had occurred and damaged the foundation wall.
The purpose of the Act is "to protect new homeowners and abandon the ancient doctrine of caveat emptor." Ingraham v. Trowbridge Builders, 297 N.J.Super. 72, 80, 687 A.2d 785 (App.Div. 1997). Under the circumstances presented here, barring plaintiffs from proceeding in court would not foster that purpose.
Also notable is that in rendering its decision on plaintiffs' first HOW warranty claim, the Bureau did not enter a final adjudication of plaintiffs' claim that the foundation wall was defective. The Bureau gave plaintiffs the right to "monitor the wall throughout the warranty period for signs of movement and/or cracking," and notify the builder and New Home Warranty Program should that occur. Thus, the Bureau did not foreclose plaintiffs from seeking additional relief in the future should the problems with the wall become worse. The question here is not whether plaintiffs are entitled to seek additional relief from the builder for defects in the wall, but in which forum they are entitled to request that relief. In that their election to proceed under the Act was not knowing and voluntary, plaintiffs are not barred from seeking additional relief in court.
We next address plaintiffs' claim against the architects. Because the architects are not builders, see N.J.S.A. 46:3B-2f (defining builder as an entity "engaged in the construction of new homes"), the election of remedies procedures do not apply to them. Konieczny, supra, 305 N.J.Super. at 384, 702 A.2d 831. Nevertheless, the architects claim that plaintiffs' lawsuit against them must fail under the doctrine of defensive collateral estoppel. We disagree.
Defensive collateral estoppel "permits a defendant who was not a party to an action involving a common plaintiff to use a finding of fact from the prior action to preclude litigation of the issue in a pending case." Id. at 385, 702 A.2d 831. The doctrine forecloses a party from litigating an issue where the party asserting the preclusion shows that
(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521, 897 A.2d 1003 (2006) (quotations and citation omitted).]
Administrative proceedings, like those before the Bureau, are generally "entitled to preclusive effect if rendered in proceedings meriting that deference." Id. at 522, *286 897 A.2d 1003 (quotations and citation omitted).
Here, the architects have not established the elements necessary to invoke collateral estoppel as a defense to plaintiffs' claim. The Bureau recognized in its 2001 decision that the wall was still susceptible to movement, with the potential for additional cracking. It advised plaintiffs to monitor the wall and notify the builder and the New Home Warranty Program if the wall continued to deteriorate, which it did. In other words, the Bureau did not render a final adjudication on the merits, the absence of which precludes the architects from invoking defensive collateral estoppel. See id. at 521, 897 A.2d 1003 (one element of collateral estoppel is that "the court in the prior proceeding issued a final judgment on the merits").
The architects have also failed to demonstrate that the issues in the court proceeding and the proceeding before the Bureau were identical. Ibid. (an element of collateral estoppel is that "the issue to be precluded is identical to the issue decided in the prior proceeding"). Plaintiffs' claim includes an allegation that the architects were negligent, and that their plans for repair of the wall fell below the standard of care for architects. That assertion of negligence was not at issue in the Bureau's 2001 decision, which was limited to whether the wall constituted a "major structural defect" as defined in the regulations. This is yet another reason that defeats the architects' collateral estoppel defense.
We therefore reverse the summary judgment dismissing plaintiffs' complaint as to all defendants and remand for further proceedings.
NOTES
[1] A wythe is a continuous vertical section of a masonry wall, one unit in thickness. International Building Code, § 2102 (2006 ed.).
[2] The trial court dismissed the claim against the architects as it related to the initial design of the house. Plaintiffs have not challenged that decision on appeal.