228 N.J. Super. 162 (1988)
549 A.2d 437
SUSAN KORTENHAUS, PLAINTIFF-RESPONDENT,
v.
ELI LILLY & COMPANY, DEFENDANT-APPELLANT, AND ABC, INC. NOS. 1 THROUGH 400 (NAMES BEING FICTITIOUS AND UNKNOWN BUT USED TO DESCRIBE MANUFACTURERS OF DES), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1988.
Decided October 4, 1988.
Before Judges GAULKIN, BILDER and R.S. COHEN.
*163 John L. McGoldrick argued the cause for appellant (McCarter & English, attorneys; John F. Brenner and Lisa M. Goldman, on the brief).
James M. Docherty argued the cause for respondent (Cohn & Lifland, attorneys; Daniel Crystal and James M. Docherty, on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is a prescription drug liability case brought against a manufacturer[1] for in utero gynecological injury plaintiff Susan Kortenhaus alleges resulted from her mother's ingestion of DES during pregnancy.[2] Her complaint asserts claims against defendant Eli Lilly & Company based on theories of negligence, strict liability and breach of warranty. The matter comes before us on defendant's interlocutory appeal, on leave granted, from a partial summary judgment precluding it from litigating certain liability issues on the ground these were previously litigated by defendant and resolved against it in an earlier action in New York, Bichler v. Eli Lilly and Co., reported on appeal at 79 A.D.2d 317, 436 N.Y.S.2d 625 (1981), aff'd 55 N.Y.2d 571, 436 N.E.2d 182, 450 N.Y.S.2d 776 (1982) and from denial of its subsequent motion for reconsideration. In the February 16, 1988 order for partial summary judgment appealed from, defendant was collaterally estopped, i.e., barred, from disputing that DES was not reasonably safe for accidents of pregnancy in 1953; that in 1953 defendant should have foreseen that DES might cause cancer in the offspring of pregnant women who took it; that a reasonable and prudent drug manufacturer would have tested DES on pregnant mice before *164 marketing it; that the results of such tests would have shown that DES causes cancer in the offspring of tested mice; and that a reasonable and prudent drug manufacturer would not have marketed DES for use in accidents of pregnancy in 1953 if it had known that DES causes cancer in the offspring of pregnant mice. On appeal defendant contends the application of collateral estoppel to preclude it from contesting these factual conclusions was improper. We agree.

I.
Collateral estoppel is a branch of the broader law of res judicata which bars relitigation of issues previously litigated and determined adversely to the party against whom the doctrine is asserted. See Allesandra v. Gross, 187 N.J. Super. 96, 103-104 (App.Div. 1982). It is said to have as its purposes the protection of litigants from relitigating identical issues and the promotion of judicial economy. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). It is primarily a rule of efficiency. See Blonder-Tongue Labs v. University Foundation, 402 U.S. 313, 328-329, 91 S.Ct. 1434, 1442-43, 28 L.Ed.2d 788 (1971); Green, The Inability of Offensive Collateral Estoppel to Fulfill Its Promise: An Examination of Estoppel in Asbestos Litigation, 70 Iowa L.Rev. 141, 144 (1984); Lindsay, Offensive Collateral Estoppel, Appendix F to Dreier, Goldman & Farer, Products Liability and Toxic Tort Law in New Jersey: A Practitioner's Guide (6th Ed. 1988) at F2. When used by a defendant to bar a claim plaintiff has previously litigated and lost against a different defendant, it is referred to as defensive collateral estoppel. See Parklane Hosiery Co. v. Shore, supra 439 U.S. at 329, 99 S.Ct. at 650. When used to bar a defendant from asserting a defense previously litigated and lost against a different plaintiff, it is referred to as offensive collateral estoppel. Ibid. In this case, we are confronted with an application of offensive collateral estoppel to bar defendant from denying that its drug *165 was unsafe and that it was negligent in marketing DES for use by pregnant women.
At one time collateral estoppel was available only where there was a mutuality of estoppel; however, more recently this requirement was discarded and a more flexible rule was adopted which emphasized a discretionary weighing of economy against fairness. See Allesandra v. Gross, supra 187 N.J. Super. at 104. New Jersey has adopted the modern rule as contained in § 29 of the Restatement of Judgments 2d.
§ 29. Issue Preclusion in Subsequent Litigation with Others
A party precluded from relitigating an issue with an opposing party, in accordance with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:
(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;
(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;
(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.
[Restatement, Judgments 2d at 229 (1982)]

*166 II.
As noted, collateral estoppel is a rule of efficiency  a principle which seeks to promote efficient justice by avoiding the relitigation of matters which have been fully and fairly litigated and fully and fairly disposed of. Its preclusive effect will always be efficient in a narrow sense of judicial economy, but it will only be just when the criteria of full and fair determination of precisely the same issues have been met. Its application "necessarily rest[s] on the trial courts' sense of justice and equity." See Blonder-Tongue Labs v. University Foundation, supra 402 U.S. at 334, 91 S.Ct. at 1445.
Fundamental to the theory of collateral estoppel is the notion that the earlier decision is reliable, an underlying confidence the result was substantially correct. See Restatement, Judgments 2d, § 29, Comment f (1982). The premise is that properly retried, the outcome should be the same. See Parklane Hosiery Co. v. Shore, supra 439 U.S. at 328, 99 S.Ct. at 649; Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 346 (5th Cir.1982). This assumption of reproducibility, that the same technique would produce the same results, is a recognized basis for scientific inquiry. See Grinnell, The Scientific Attitude, 26-27 (1987). The considerations enumerated by the Restatement are largely tests by which confidence in the earlier decision may be measured. See State v. Gonzalez, 75 N.J. 181, 190 (1977).
The application of offensive collateral estoppel is a discretionary matter for the court, see Parklane Hosiery Co. v. Shore, supra 439 U.S. at 331, 99 S.Ct. at 651, and as a rule of efficiency should not be applied unless the court is fully satisfied with its fairness. Ibid.

III.
In the instant case, plaintiff alleges that she has cervical intraepithelial neoplasia III, a non-invasive carcinoma with the *167 potential to become invasive[3], and suffered an ectopic pregnancy.[4] She contends that this condition resulted from the ingestion by her mother during her 1961-1962 pregnancy of DES manufactured by defendant. By an in limine motion, plaintiff successfully sought to preclude defendant from litigating the questions of its negligence in testing and marketing DES and the fact that DES was defective. She contended that these issues had already been resolved by a jury in Bichler v. Eli Lilly and Co., supra, and that relitigation was barred by the doctrine of collateral estoppel. As noted, the trial judge agreed and entered an order establishing that defendant was negligent in its marketing and testing of DES and that the drug was defective or, more accurately, precluding defendant from disputing these facts.
In a lengthy written opinion, the trial judge found that the issues decided by the Bichler jury were identical to the issues plaintiff sought to preclude; that the judgment was on the merits; and that defendant was party to that action and had an incentive for asserting a vigorous defense, see Parklane Hosiery Co. v. Shore, supra 439 U.S. at 332, 99 S.Ct. at 652. He declined to consider evidence that the Bichler verdict may have been based on compromise because he believed defendant's rights were concluded by the judgment and, moreover, that his court was constitutionally required to give full faith and credit to the Bichler judgment. Finally, he declined to consider any inconsistent determinations made after Bichler or which did not involve Lilly. He expressed the view that "[t]here is nothing *168 novel or unfair about the notion that a defendant who suffers an unfavorable decision, even after a series of favorable ones, may find itself forever barred from relitigating the issues as to which the adverse judgment was granted."

IV.
The application of offensive collateral estoppel in the face of inconsistent verdicts is antithetical to the very basis of the rule  confidence in the first outcome. "Not only does issue preclusion in [cases where there are inconsistent verdicts] appear arbitrary to a defendant who has had favorable judgments on the same issue, it also undermines the premise that different juries reach equally valid verdicts." Hardy v. Johns-Manville Sales Corp., supra at 346. See also Bates v. John Deere Co., 148 Cal. App.3d 40, 48, 195 Cal. Rptr. 637, 642-643 (1983). Disparate results  whatever their chronology  cast doubt on the reproducability of the adverse result.

f. Inconsistent prior determination. Giving a prior determination of an issue conclusive effect in subsequent litigation is justified not merely as avoiding further costs of litigation but also by underlying confidence that the result reached is substantially correct. Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted. The inference, rather, is that the outcomes may have been based on equally reasonable resolutions of doubt as to the probative strength of the evidence or the appropriate application of a legal rule to the evidence. That such a doubtful determination has been given effect in the action in which it was reached does not require that it be given effect against the party in litigation against another adversary.
[Restatement, Judgments 2d, § 29, comment f]
This doubt can even be created by ambivalence in the prior determination.

g. Ambivalence of prior determination. The circumstances attending the determination of an issue in the first action may indicate that it could reasonably have been resolved otherwise if those circumstances were absent. Resolution of the issue in question may have entailed reference to such matters as the intention, knowledge, or comparative responsibility of the parties in relation to each other. Particularly where the issues have been tried to a jury, the circumstances may suggest that the issue was resolved by compromise or with more or less conscious reference to such matters as insurance coverage or the litigants' relative financial position. In these and similar situations, taking the *169 prior determination at face value for purposes of the second action would extend the effects of imperfections in the adjudicative process beyond the limits of the first adjudication, within which they are accepted only because of the practical necessity of achieving finality.
[Id. comment g]
In the instant case the existence of inconsistent results is clear. Not only has defendant furnished such examples[5] but the trial court, seemingly, acknowledged their existence, although discounting them as subsequent determinations or determinations which did not involve this particular DES manufacturer. Knowledge at the time issue preclusion is considered that inconsistent results have been obtained with respect to the resolution of those issues casts doubt as to the reliability of a particular result adverse to a defendant and makes its preclusive application unfair. See Hardy v. Johns-Manville Sales Corp., supra; State Farm Fire & Cas. Co. v. Century Home Compon, Inc., 275 Or. 97, 109, 550 P.2d 1185, 1191 (1976); Bates v. John Deere Co., 148 Cal. App.3d 40, 48, 195 Cal. Rptr. 637, 642-643 (1983); Desmond v. Kramer, 96 N.J. Super. 96, 104 (Cty.Ct. 1967). This would be true whether the inconsistency preceded or followed the adverse result plaintiff seeks to use. See e.g. Sandoval v. Superior Court of Kings County, 140 Cal. App.3d 932, 934, 944, 190 Cal. Rptr. 29, 31, 37 (1983) where the inconsistent verdict came two years after the verdict plaintiff sought to employ preclusively.
We are satisfied Lilly's success in much of its DES litigation experience makes the application of offensive collateral estoppel inappropriate and requires reversal. While not necessary to *170 this decision, we also note that the findings in Bichler were based upon concerted action by a number of manufacturers with respect to a generic drug. Since Lilly's liability was coextensive with that of the other drug companies with which it cooperated, inconsistent results in litigation against the other manufacturers should also be relevant in gauging the confidence which can be had with respect to the preclusive use of Bichler.

V.
Defendant also contends plaintiff has not borne its burden of showing that the issues in Bichler were identical with those presented in this case, see Allesandra v. Gross, supra 187 N.J. Super. at 105, and that changes in the state of medical science and the publication of new studies should deprive Bichler of preclusive effect, see Zweig v. E.R. Squibb & Sons, Inc., 222 N.J. Super. 306, 312 (App.Div. 1988), certif. den. 111 N.J. 614 (June 7, 1988). As to the latter, in its brief, plaintiff does not contest the existence of new material, only its relevance  a sophisticated question beyond determination on such a motion. As to the former, it is useful to note that at least one court which has considered the matter concluded the exact nature of the issues litigated in Bichler could not be determined from the published opinions alone. See Wetherill v. University of Chicago, 548 F. Supp. 66, 68-69 (N.D.Ill. 1982); also Robinson-Shore Development Co. v. Gallagher, 26 N.J. 59, 68 (1958)

VI.
In sum, it is clear that the Bichler decision does not bear the comforting sense of reliability that justifies its use to bar defendant from litigating these liability issues which it strongly contests.
REVERSED.
NOTES
[1] In her complaint plaintiff named Lilly and 400 other unknown defendants. Lilly remains the only named defendant.
[2] An exhaustive explanation of DES is found in Ferrigno v. Eli Lilly and Co., 175 N.J. Super. 551, 561-565 (Law Div. 1980).
[3] There appears to be some dispute as to plaintiff's condition. This is plaintiff's description as set forth in her brief. Affidavits filed in connection with defendant's motion for reconsideration of the trial judge's decision describe this as Stage O epidermoid carcinoma of cervix (plaintiff) (apparently benign tissue was removed in an operative procedure) and a pre-cancerous condition (defendant).
[4] This latter claim does not appear to be significant within the context of this appeal.
[5] Shirkey v. Lilly, 84-C-288 (E.D.Wis. 3/13/87); McAdams v. Lilly, 77-C-4174, (N.D.Ill. 12/16/86); Sardell v. Lilly, 18268/77 (N.Y. Sup. Ct. 11/24/82); Keil v. Lilly, 75-70997 (E.D.Mich. 1981); Hadden v. Lilly, L-5484-76 (N.J. Super.Ct., Law Div. 1986). Other courts have also recognized the existence of inconsistent verdicts in denying collateral estoppel based on Bichler: Wetherill v. University of Chicago, 548 F. Supp. 66 (N.D.Ill. 1982); Watson v. Lilly, 82-0951, (D.D.C. 7/30/82); Dawson v. Lilly, 81-1288, (D.D.C. 8/30/82); Pine v. Lilly, L-65163-80 (N.J. Super.Ct., Law Div. 7/8/87); Hadden v. Lilly, supra.