290 N.J. Super. 49 (1996)
674 A.2d 1013
NOREEN LONDON BATSON, PLAINTIFF-RESPONDENT,
v.
LEDERLE LABORATORIES, A DIVISION OF AMERICAN CYANAMID COMPANY, A MAINE CORPORATION DOING BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 26, 1996.
Decided April 30, 1996.
*51 Before Judges DREIER, A.M. STEIN and KESTIN.
William C. Slattery argued the cause for appellant (Slattery & McElwee, attorneys; Mr. Slattery, on the brief).
James I. Peck, IV argued the cause for respondent.
The opinion of the court was delivered by DREIER, P.J.A.D.
Defendant appeals on leave granted from an interlocutory order of the trial judge determining that he would apply the principle of offensive collateral estoppel based upon the companion case involving plaintiff's sister, London v. Lederle Laboratories, Inc., 290 N.J. Super. 318, 675 A.2d 1133 (App.Div. 1996), which had just been tried to conclusion before him. The sisters' physician, Robert L. *52 Pierce, M.D. had prescribed and administered to the sisters brands of tetracycline, primarily those of defendant, from birth through their teenage years. In the London matter, the jury determined that Lederle knew of the teeth-staining propensities of tetracycline from 1958 or 1959, yet did not warn of this problem until 1964. Plaintiff, born in 1955, ingested Lederle's tetracycline between 1957 and 1961. Since the same physician prescribed the drugs, many of the issues present in the London matter are duplicated in this case. As we noted at oral argument, we do not understand why these matters, which were to be tried sequentially, were not consolidated, since the proof in each case was practically identical (except for three relatively minor issues: the time of the first ingestion, the effect of two later administrations of non-Lederle tetracycline in the London matter, and the damages suffered by each of the sisters).[1]
Collateral estoppel permits one who was not a party to an action involving a common defendant or plaintiff to use a finding of fact from that action to preclude relitigation of the issue in the pending case. Kortenhaus v. Eli Lilly & Co., 228 N.J. Super. 162, 164, 549 A.2d 437 (App.Div. 1988). Of course, where, on substantially identical proofs, triers of fact in multiple case have reached different conclusions concerning the disputed fact, collateral estoppel is inappropriate. Id. at 168-170, 549 A.2d 437. The inconsistent verdicts erode a fundamental tenet on which the doctrine is based because the court can no longer rely on the presumption that the earlier decision was reliable and substantially correct. Id. at 166, 168, 549 A.2d 437.
Defendant argues that offensive collateral estoppel is inapplicable in this case, primarily because the London verdict finding that Lederle knew of the danger in 1958/59 is inconsistent with the verdicts previously rendered in the Feldman series of *53 cases[2] determining that Lederle did not know of the danger until at least 1960. Verdicts that are different, however, are not necessarily "inconsistent." Earlier decisions are deprived of their potential collateral estoppel effect where, for example, "later scientific discoveries ... cast doubt on prior findings of scientific facts...." Zweig v. E.R. Squibb & Sons, Inc., 222 N.J. Super. 306, 312, 536 A.2d 1280 (App.Div.), certif. denied, 111 N.J. 614, 546 A.2d 533 (1988).
The same is true where new facts or better proof are later available. In the London case, plaintiff presented Kevin Rooney, a former key employee of Lederle, whose testimony apparently was unavailable in the Feldman series of cases. Rooney testified as a hostile witness regarding Lederle's knowledge of the danger of tetracycline in the late 1950's. The record of the Feldman decisions indicates that Lederle apparently concealed from the Feldman plaintiff the information Rooney provided in London. Feldman contained only some of Rooney's letters which did not provide the definite proof of early knowledge available in the cases before us. Due to the previously unavailable information regarding Lederle's knowledge, the Feldman case cannot be considered to have any collateral estoppel effect.[3] Presumably, that information also was unavailable in Donigi v. American Cyanamid Co., 57 A.D.2d 760, 394 N.Y.S.2d 422 (1977), aff'd, 43 N.Y.2d 935, 403 N.Y.S.2d 894, 374 N.E.2d 1245 (1978), cited by defendant and decided before Feldman, in which a jury found no liability on Lederle's part on the basis that it did not know in 1958 that tetracyclines caused tooth staining. Defendant's attempts to preclude *54 plaintiff from invoking offensive collateral estoppel on the basis of the inconsistency of the London verdict with Feldman and Donigi are misplaced, when in back-to-back cases the proofs would have been virtually identical and would have included information unavailable or not offered in Feldman and Donigi.
Defendant has also claimed that offensive collateral estoppel is unavailable to a plaintiff who had the opportunity to join in the earlier action but failed to do so. The fact that plaintiff did not join her sister's case does not preclude her from invoking offensive collateral estoppel. Under the Restatement of Judgments 2d, § 29 (1982), cited with approval in Kortenhaus v. Eli Lilly, supra, 228 N.J. Super. at 165, 549 A.2d 437, one of the eight "circumstances" to be considered when a defendant wishes to relitigate an issue is whether:
(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary.
However, no New Jersey case has explicitly discussed or adopted this factor of the Restatement test as mandatorily disqualifying a party from claiming issue preclusion.[4] On the other hand, New Jersey has adopted the general rule that determinations concerning the applicability of collateral estoppel should involve "a discretionary weighing of economy against fairness." 228 N.J. Super. at 165, 549 A.2d 437; see also State v. Gonzalez, 75 N.J. 181, 191-92, 380 A.2d 1128 (1977).
In this case, Lederle has not shown that permitting it to relitigate the knowledge issue would involve anything other than a duplication of the proofs presented in London. It has made no showing of new scientific evidence regarding the harmlessness of tetracycline, or proof that its own records and former employee's testimony can be further rebutted, or anything else that would bring into doubt the collateral preclusionary effect of the London *55 finding. While joinder would have been the wiser initial course, defendant does not argue that plaintiff should be precluded from suing altogether, and there is no sound reason that plaintiff or the court system should be required to undergo the duplication of efforts regarding an issue settled, for now, in the London case.
In the companion London case we have remanded the matter for a new trial on the issues of proximate cause, allocation of compensatory damages, and punitive damages. We have preserved the jury's findings concerning defendant's knowledge of the tooth-staining dangers as of 1958/59 and its failure to issue appropriate warnings as well as the amount of compensatory damages awarded to Ms. London. The issues of whether the warnings, if given, would have been heeded by Dr. Pierce, a proximate cause question, remains, as does the allocation of damages, if any between Lederle's defective product and other causes, and defendant's responsibility for punitive damages if the proximate cause question is answered in Ms. London's favor. These three issues are common to the case now before us, although in this case there must also be a decision concerning Ms. Batson's compensatory damages if the threshold proximate cause issue is decided in her favor.
We see no reason why at this point there should be two trials on the same issues. We therefore consolidate the cases on remand. Because of the punitive damages issue, there must of necessity be some repetition of the proofs concerning defendant's knowledge of the harmful propensities of its product and its consequent actions. While the dates when defendant acquired knowledge have been established in the London matter and relitigation thereof is now precluded in the Batson matter, the jury is entitled to know the circumstances of the knowledge and any efforts made to withhold this knowledge from the public. These proofs, however, will be confined to the punitive damage phase of the case, if any, after the jury has returned its verdict concerning proximate cause as discussed in our London opinion, as it affects both plaintiffs; the allocation of compensatory damages; and the compensatory damage *56 award, if any, to Ms. Batson. Following the procedures set forth in Herman v. Sunshine Chemical Specialties, Inc., 133 N.J. 329, 627 A.2d 1081 (1993), incorporating the former sections of the Products Liability Act, N.J.S.A. 2A:58C-5, the judge shall then, if the issue remains viable, permit the relevant proof concerning the several factors bearing upon the liability for and amount of punitive damages.
In short, we affirm the trial judge's decision to invoke the principle of offensive collateral estoppel in this case insofar as it establishes the dates upon which defendant became aware of the tooth-staining problems associated with its products. On our own motion, however, we are consolidating the Batson and London matters on remand so that other common questions of fact can be determined in the single proceeding.
NOTES
[1] As we noted in London, the earlier dismissal of a third suit brought by plaintiff's brother had been on statute of limitation grounds.
[2] See Feldman v. Lederle Labs., 97 N.J. 429, 479 A.2d 374 (1984); Feldman v. Lederle Labs., 125 N.J. 117, 592 A.2d 1176 (1991), cert. denied, 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992); Feldman v. Lederle Labs., 132 N.J. 339, 625 A.2d 1066 (1993) for the Supreme Court's resolutions of the many issues presented in the series.
[3] Furthermore, the jury's conclusion in the companion case is not inconsistent with some other authority. See, e.g., Wallace v. Upjohn Co., 535 So.2d 1110, 1116 (La. Ct. App. 1988), writ denied, 539 So.2d 630 (La. 1989) (establishing industry knowledge in 1956).
[4] See Parklane Hosiery v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 651-52, 58 L.Ed.2d 552, 562 (1979) (where the Court stated that a failure to join in the original action should usually, but not always, be disqualifying).