## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5230-18

JAMES CARIFI,

    Plaintiff-Appellant,

v.

TOWNSHIP OF PARSIPPANY-
TROY HILLS and PAUL
PHILIPPS,

    Defendants-Respondents.

_____

> Argued April 12, 2021 – Decided August 23, 2021
>
> Before Judges Messano, Hoffman, and Suter.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1681-18.
>
> Christopher L. Deininger argued the cause for appellant.
>
> Robert F. Renaud argued the cause for respondent Township of Parsippany-Troy Hills (Renaud Deappolonio, LLC, attorneys; Robert F. Renaud, on the brief).

Thomas B. Hanrahan argued the cause for respondent Paul Philipps (Hanrahan Pack, LLC, attorneys; Thomas B. Hanrahan, of counsel and on the brief).

PER CURIAM

On August 26, 2018, plaintiff James Carifi, a former captain in the Parsippany-Troy Hills Police Department (the PD), filed this action (Carifi IV)[1] against the Township of Parsippany-Troy Hills (the Township) and its former police chief, Paul Philipps. Plaintiff's complaint alleged violations of 42 U.S.C.

---

[1] In Carifi v. Twp. of Parsippany-Troy Hills (Carifi I), No. A-2356-17 (App. Div. December 14, 2020), a suit filed in October 2011, plaintiff sued the Township and its former chief of police, Michael Peckerman, alleging various claims, including a violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. Carifi I concluded in a no-cause jury verdict in October 2017 and plaintiff appealed. On December 14, 2020, we vacated the dismissal of plaintiff's case against the Township and remanded for a new trial, concluding the trial court committed reversible error regarding the issue of vicarious liability; however, we affirmed the dismissal of plaintiff's claims against retired Chief Peckerman. In October 2013, the Township sued plaintiff for breach of contract, Twp. of Parsippany-Troy Hills v. Carifi (Carifi II), No. MRS-L-2604-13; in that suit, the Township alleged plaintiff wrongfully refused to repay the tuition for his graduate degree, after he did not remain employed as an officer for two years after obtaining his degree. Carifi II settled before trial. On December 26, 2014, plaintiff filed suit in Carifi v. Barberio (Carifi III), A-0597-17 (App. Div. December 14, 2020); in that action, plaintiff alleged tortious conduct against the Township, and four other defendants. In August 2017, the Law Division granted dismissal motions filed by each defendant, after determining plaintiff's complaint failed to state a claim upon which relief could be granted. Plaintiff appealed and we affirmed in a separate opinion, issued the same date we decided Carifi I.

§ 1983 and the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-2(c), regarding his employment and retirement.

The Law Division dismissed plaintiff's complaint, finding that his claims were barred by the statute of limitations, res judicata, collateral estoppel, the entire controversy doctrine, and because of a release plaintiff signed as part of the settlement of Carifi II.

Philipps' attorney in this litigation, Thomas P. Hanrahan, represented the Township and other defendants in previous litigation between the parties. Plaintiff moved to disqualify Mr. Hanrahan and his law firm on the ground that Mr. Hanrahan had a conflict of interest. The court denied the motion. Plaintiff sought to file supplemental pleadings four times, but the court permitted only the first filing.

On appeal, plaintiff argues that the motion court erred when it denied his motions to disqualify Mr. Hanrahan and to supplement his pleadings the second, third, and fourth times, and when it dismissed his complaint. We affirm, concluding the motion court properly dismissed plaintiff's complaint and denied his requests to file additional supplemental pleadings. Because we conclude the motion court properly dismissed plaintiff's complaint, we need not reach the disqualification issue.

I.

A.

We assume familiarity with, and incorporate by reference, the underlying procedural history and background facts contained in our Carifi I and Carifi III opinions. We begin with a summary of the procedural history in the matter under review, Carifi IV, and then follow with a summary of the most salient facts relating to this appeal.

In September 2018, plaintiff filed an amended complaint that included an extensive recitation of facts related to his employment, his retirement, and the three previous lawsuits among the parties. The amended complaint, eighty-six pages long, contained 352 numbered paragraphs.

The following month, defendants, represented by separate law firms, each filed answers to the amended complaint. On October 24, 2018, plaintiff moved to disqualify then-Chief Philipps' attorney, Mr. Hanrahan, and his law firm, Hanrahan Pack LLC (the law firm). Plaintiff argued that Mr. Hanrahan had a conflict of interest, since he represented the Township and other defendants in previous litigation involving the parties without obtaining informed consent from the adverse parties.

In November and December 2018, defendants each filed a motion to dismiss plaintiff's complaint. On December 13, 2018, plaintiff cross-moved to file a supplemental pleading. On January 4, 2019, the court heard oral argument on the motion to disqualify Mr. Hanrahan. That same day, the court denied defendants' motions to dismiss the complaint and permitted plaintiff to file his first supplemental pleading. On January 10, 2019, the court issued a written opinion denying plaintiff's motion to disqualify Mr. Hanrahan.

On January 23, 2019, plaintiff filed his first supplemental pleading, which included a new claim that the Township wrongfully denied a request he submitted pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1.1 to -13. On January 29, 2019, defendants each filed new motions to dismiss plaintiff's complaint.

On April 5, 2019, plaintiff moved to file a second supplemental pleading, seeking to add a claim that the Township had interfered with hearing officer Joseph Devine, who had ruled on disciplinary charges the Township brought against plaintiff in December 2014.

On May 19, 2019, plaintiff requested leave to file a third supplemental pleading, seeking to add a claim that the Township had violated his constitutional rights by withholding some of his accrued retirement benefits for

5

unpaid sick leave, while paying those same benefits to other similarly situated retired officers.

On June 4, 2019, plaintiff sought leave to file a fourth supplemental pleading, seeking to add a claim that the Township violated his constitutional rights because, even though plaintiff retired in good standing, the Township nevertheless withheld some of his accrued retirement benefits but paid similar benefits to another officer, who did not retire in good standing.

On June 21, 2019, Judge Stephan Hansbury heard oral argument on plaintiff's motions to file supplemental pleadings and defendants' motions to dismiss plaintiff's complaint. In orders entered on June 27, and August 12, 2019, Judge Hansbury denied plaintiff's motions to file his second, third, and fourth supplemental pleadings, and dismissed plaintiff's complaint against then-Chief Philipps and the Township. This appeal followed.

B.

Plaintiff began working as a patrol officer for the PD in December 1992. He was promoted, eventually reaching the rank of captain.

In January 2009, plaintiff was transferred to the planning and research (P & R) section of the support services division. There, he supervised Sergeant

6

Yvonne Christiano and Patrolman Earl Kinsey. In May 2009, Captain Edward Jasiecki became plaintiff's supervisor.

On September 2, 2009, Captain Jasiecki filed an Internal Affairs (IA) complaint (IA 0932) alleging that plaintiff was guilty of official misconduct because of a "road job" violation.[2] The complaint alleged that plaintiff asked Sergeant Christiano and Patrolman Kinsey to falsify documents in connection with a road job so plaintiff could earn overtime pay.

The next day, September 3, 2009, plaintiff was transferred from his regular police duties to general undefined duties in the support services division. Meanwhile, then-Captain Philipps,[3] the division commander of IA, began an investigation into the allegations in IA 0932. Chief Michael Peckerman authorized Captain Philipps to refer the matter to the Morris County Prosecutor's Office (MCPO) to determine whether criminal charges should be brought against plaintiff for official misconduct. Captain Philipps delegated to Captain Andrew Miller to forward this information to MCPO. On January 19, 2010, Captain Philipps completed the investigation of IA 0932, culminating in a finding of "not sustained."

---

[2] Plaintiff described a "road job" as an off-duty job performed for a contractor.

[3] Philipps became the Township's police chief in March 2013.

 A-5230-18

On September 8, 2009, plaintiff found documents on his desk pertaining to the PD's animal control section. The documents indicated that officers in the animal control section were "double dipping" and being paid twice for the same work. After plaintiff delivered a memo to Chief Peckerman and Captain Jasiecki about the animal control officers' salaries, Captain Miller began an IA investigation into the matter.

On September 11, 2009, the Township notified plaintiff that IA 0932 was being reviewed by MCPO to determine whether criminal charges should be filed. On October 5, 2009, MCPO notified the Township that there was no basis for criminal proceedings in IA 0932, but plaintiff was not informed of this development. On November 9, 2009, Captain Philipps notified plaintiff that his investigation was ongoing, but did not mention that MCPO found no basis for criminal proceedings. On January 5, 2010, Captain Philipps informed plaintiff for the first time that the investigation was administrative only, and not criminal.

At first, plaintiff denied the allegations in IA 0932, but later admitted that he had wanted to "bump off" the other officers so he could work the road job and earn overtime pay. Plaintiff believed Sergeant Christiano and Patrolman Kinsey were biased against him.

In the course of the IA 0932 investigation, plaintiff questioned why Captain Philipps had not enforced PD rules prohibiting Sergeant Christiano from wearing her hair in a ponytail and produced a picture of her hairstyle while on duty. Plaintiff also filed an IA complaint regarding Captain Philipps' and Captain Jasiecki's handling of the road job incident because they delayed investigating the matter; however, Chief Peckerman determined the complaint was unfounded.

Ultimately, Captain Philipps conceded that it took him only eight working days to complete the investigation of IA 0932. On January 19, 2010, Chief Peckerman determined that IA 0932 was not proven.

In the course of these events, plaintiff filed a complaint alleging that Captain Jasiecki improperly leaked to the media a confidential document that contained disparaging information about him. Captain Miller began an IA investigation of the matter and on January 5, 2010, the charges against Captain Jasiecki were sustained, with a resulting ten-day suspension without pay; however, plaintiff testified that Captain Jasiecki never served this suspension,[4]

---

[4] Captain Jasiecki disputed the claim that he never served his suspension, testifying that Chief Peckerman agreed that he could serve his suspension one day at a time, which he spread out over "[ten] pay periods."

A-5230-18

nor was he ever transferred before, during, or after the investigation. In addition, Captain Jasiecki remained plaintiff's supervisor even though plaintiff requested his transfer.

In April 2010, the department returned plaintiff to his prior position in P & R. On July 19, 2010, Captain Miller was instructed to begin an EEOC investigation regarding plaintiff, but plaintiff was later exonerated of that complaint by Chief Peckerman. From July to September 2010, plaintiff's superiors again transferred him from his regular duties.

In the meantime, on August 1, 2010, plaintiff was promoted to the rank of captain; however, Chief Peckerman and Captain Philipps delayed changing his salary and giving him a captain's vehicle. Plaintiff alleged this was done in retaliation for the allegations against him in IA 0932.

In February 2011, plaintiff reported that thirteen laptops were missing from the PD, but the issue was never investigated or resolved. On May 25, 2011, the PD received an anonymous phone call reporting that plaintiff had committed official misconduct in connection with the re-election campaign of his brother, a councilman in the Township. Captain Miller investigated the claim, IA investigation 1109 (IA 1109), and determined the allegations were unfounded.

A-5230-18

In October 2011, while still employed by the Township, plaintiff filed suit in Carifi I, alleging the Township and Chief Peckerman violated his civil rights and CEPA. The law firm and Mr. Hanrahan were defense counsel representing the Township and Chief Peckerman. Before trial, the court dismissed all of plaintiff's claims except his CEPA claim.

In June 2012, plaintiff requested to take a promotional exam to become deputy chief, but then-Deputy Chief Philipps refused. According to Captain Miller, these exams were routinely given upon request. In early 2013, plaintiff's brother decided to run for mayor of the Township.

On March 15, 2013, plaintiff announced he would "involuntarily" retire. That same month, in anticipation of his imminent retirement, plaintiff applied for a permit to carry a firearm, but then-Chief Philipps denied the application. The Law Division ultimately granted plaintiff the firearm permit, stating that the PD provided no evidence to support denial of the application.

On March 27, 2013, the PD began an IA investigation (IA 2013-11) into plaintiff because of alleged violations that occurred when he deleted computer files in anticipation of his retirement. Plaintiff retired on April 1, 2013.

In October 2013, the Township filed a complaint against plaintiff in Carifi II, alleging that plaintiff improperly deleted files on his department computer in

11

anticipation of retirement and improperly released confidential IA information. Plaintiff believed then-Chief Philipps had knowingly sworn to false facts in the verified complaint in Carifi II. Plaintiff filed a third-party claim in that action against various defendants, including Nicholas Milewski, a former associate at Mr. Hanrahan's law firm. In the course of Carifi II, on August 8, 2017, then-Chief Philipps filed a certification stating that Officer Sean Clark's use of an adult sexual encounter web site (AshleyMadison.com) was for official business (the Ashley Madison certification). Captain Miller was deposed in Carifi II on November 5, 2014. In Carifi II, the Township retained Aurora Information Security & Risk to complete a forensic analysis of plaintiff's computer.

According to plaintiff, in 2013 and 2014, the PD, Township Mayor James Barberio, and John P. Inglesino (the attorney for the Township) requested that MCPO file criminal charges against him in connection with the improperly deleted computer files; in late 2014, MCPO declined to pursue criminal proceedings in the matter. In December 2014, the Township adopted a policy entitled "Exit Procedure for Separation of Duty Policy and Procedure Volume I, Chapter 18" (the exit policy), requiring that members of the PD must return all flash drives or other data storage devices when leaving employment with the

12

department. The exit policy was apparently not enforced with respect to six individuals who left the department after December 2014.

In December 2014, plaintiff was served with disciplinary charges in connection with IA 2013-11, the investigation into his deletion of computer files. Ultimately, the hearing officer ruled that the PD had no jurisdiction to pursue the charges because plaintiff had retired.

In December 2014, plaintiff filed suit against the Township and various Township employees (Carifi III), asserting contractual claims in connection with the Township's failure to pay him certain accrued sick and vacation leave retirement benefits totaling $368,482. On August 28, 2017, the court dismissed with prejudice Carifi III, with Mr. Hanrahan representing the defendants.

In the interim, on June 24, 25, and 26, 2015, Captain Miller was deposed in Carifi I. At his deposition, Captain Miller stated he was represented by Mr. Milewski. Captain Miller discussed Captain Philipps' delay in investigating IA 0932. During the deposition, Mr. Milewski instructed Captain Miller not to answer certain questions and Captain Miller indicated his understanding that he was required to comply with Mr. Milewski's legal advice.

In the previous month, May 2015, plaintiff submitted an OPRA request to the Township seeking documents pertaining to department IA investigations that

occurred in 2013 and 2014 (the OPRA requests). On July 29, 2015, the Township responded that no such records existed. Plaintiff made an additional OPRA request on March 7, 2017, for IA summaries for the years 2010 to 2014, but the request was denied. Plaintiff petitioned MCPO to look into the matter and on July 14, 2017, MCPO instructed the Township to investigate the denial of plaintiff's OPRA requests. On October 30, 2018, the Township informed plaintiff that it had wrongly responded to his OPRA requests and that the documents existed. The Township Clerk told plaintiff that proper measures had been put in place to ensure that this would not occur again, but plaintiff could file a claim in court or with the government records council because his request had been denied.

Meanwhile, in September 2017, a jury trial began on plaintiff's CEPA claim in Carifi I. Plaintiff called Captain Miller as a witness and Mr. Hanrahan cross-examined him and tried to impeach his credibility because some of his testimony was adverse to the Township. After the jury returned a no-cause verdict, the court dismissed plaintiff's complaint with prejudice. Plaintiff appealed and Mr. Hanrahan represented the Township in the Carifi I appeal. According to plaintiff, a critical issue in the appeal was whether he was entitled to a new trial because then-Captain Philipps gave false testimony in Carifi I.

14

Carifi II (the computer files action) ultimately settled on February 9, 2018. As part of the settlement in Carifi II, plaintiff signed a release which set forth various facts, including that the court had dismissed his counterclaims. The release provided that plaintiff and the Township:

> [H]ereby irrevocably and unconditionally release and forever discharge each other from any and all claims and causes of action, including attorney's fees and costs and including any and all claims for contribution, compensatory damages, and punitive damages, and any and all other claims of any nature whatsoever, at law or in equity, which the parties had, now have, or hereafter may have had, against each other, known or unknown, arising out of the acts occurring up to and including the Effective Date of this Agreement, related only to the claims and defenses outlined in the Lawsuit as of the Effective Date. Nothing in this release shall affect any direct claims or defenses that the [T]ownship or [plaintiff] have against one another . . . with respect to [Carifi I and III].

In April 2018, plaintiff requested that the Township reimburse him for attorney's fees he incurred in defending the criminal complaints that were brought by the Township against him, and that MCPO declined to pursue, in December 2014. The Township declined plaintiff's request.

In Carifi IV, plaintiff did not plead any new facts. Instead, he utilized events that transpired during his employment and after his retirement and that

A-5230-18

were pled in the previous three litigations to allege that the Township and then-Captain and later-Chief Philipps violated his constitutional rights.

C.

Ruling on defendants' motions, Judge Hansbury dismissed plaintiff's complaint with prejudice for failure to state a claim upon which relief could be granted. The judge found that statements Captain Philipps made in prior litigation were entitled to witness immunity and litigation privilege. The judge also ruled that plaintiff's claims for retirement income that accrued in 2013 and legal fees that accrued in 2013 and 2014 were time-barred. In addition, plaintiff's claim for the retirement income he believed the Township wrongfully withheld was barred by res judicata and collateral estoppel given that those funds were the subject of Carifi III. The judge determined that plaintiff's other claims were resolved by prior litigation and barred by the entire controversy doctrine.

Judge Hansbury determined that Carifi IV was an attempt to relitigate Carifi I and that claims related to Carifi II were barred because plaintiff signed a settlement agreement in that matter. The judge further found that plaintiff failed to state a federal or New Jersey civil rights claim and that plaintiff had no individual right to file a lawsuit because his OPRA claim was denied. In

16

addition, plaintiff was not entitled to criminal-defense attorney's fees because as of December 2014, MCPO had declined to pursue criminal proceedings against him. The judge denied plaintiff's requests to file second, third, and fourth supplemental pleadings because those pleadings did not support claims under 42 U.S.C. § 1983 or N.J.S.A. 10:6-2(c), and were barred by res judicata.

## II.

Rule 4:6-2(e) permits a court to grant a motion to dismiss for failure to state a claim upon which relief can be granted. A reviewing court "searches the complaint in depth and with liberality" to ascertain whether a cause of action "may be gleaned even from an obscure statement of claim . . . ." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746-47 (1989). When deciding a motion to dismiss, the issue is not whether the allegations can be proven. Ibid. Plaintiffs are entitled to every reasonable inference of fact and the analysis should be made "with a generous and hospitable approach." Ibid. A motion to dismiss should only be granted in the rarest of circumstances. Camden Cnty. Energy Recovery Assocs., LP v. N.J. Dep't of Env't Prot., 320 N.J. Super. 59, 64-65 (App. Div. 1999). If the complaint states no basis for relief and discovery will not provide one, dismissal is appropriate. Cnty. of Warren v. State, 409 N.J. Super. 495, 503 (App. Div. 2009).

An appellate court reviews de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e). Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019).

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To make a claim pursuant to § 1983, "a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008). N.J.S.A. 10:6-2(c) is the state corollary to § 1983 and

> provides a remedy against private and public defendants for a person who demonstrates that he or she

18

has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

[Owens v. Feigin, 194 N.J. 607, 611 (2008) (quoting N.J.S.A. 10:6-2(c)).]

"Given their similarity, our courts apply § 1983 immunity doctrines to claims arising under the [NJCRA]." Brown v. State, 442 N.J. Super. 406, 424-25 (App. Div. 2015), rev'd on other grounds, 230 N.J. 84 (2017).

The doctrine of res judicata provides that a cause of action between parties that has been finally determined on the merits cannot be relitigated by those parties in a new proceeding. Velasquez v. Franz, 123 N.J. 498, 505 (1991). New Jersey law requires three basic elements for res judicata to apply:

(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

[Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 412 (1991).]

A-5230-18

Collateral estoppel "bars relitigation of issues previously litigated and determined adversely to the party against whom [it] is asserted." Barker v. Brinegar, 346 N.J. Super. 558, 565-66 (App. Div. 2002) (alteration in original) (quoting Kortenhaus v. Eli Lilly & Co., 228 N.J. Super. 162, 164 (App. Div. 1988)). It is designed "to promote efficient justice by avoiding the relitigation of matters which have been fully and fairly litigated and fully and fairly disposed of." Ibid. (quoting Kortenhaus, 228 N.J. Super. at 166). As explained in Barker:

> In all cases in which collateral estoppel is sought to be invoked, the court must, in the exercise of its discretion, weigh economy against fairness. Because collateral estoppel is an equitable doctrine, it will not be applied if it is not fair to do so. Efficiency is subordinated to fairness and, consequently, if the court is satisfied that efficiency would lead to an unjust result, its application should not be tolerated.
>
> [Ibid. (citations omitted).]

The doctrine of collateral estoppel requires a showing that:

> (1) the issue [sought] to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding . . . [and] that "the litigant against whom issue preclusion is invoked [had] a full and fair opportunity to litigate the issue . . . "; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[<u>Id.</u> at 567 (alterations in original).]

The entire controversy doctrine seeks to assure that all aspects of a legal dispute occur in a single lawsuit. The goals of the doctrine are to promote judicial efficiency, assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of all legal matters. <u>Olds v. Donnelly</u>, 150 N.J. 424, 431 (1997). The entire controversy doctrine is embodied in <u>Rule</u> 4:30A. It requires a litigant to present "all aspects of a controversy in one legal proceeding." <u>Hobart Bros. v. Nat'l Union Fire Ins. Co.</u>, 354 N.J. Super. 229, 240 (App. Div. 2002).

First, plaintiff argues that Judge Hansbury erred by failing to apply the more rigorous summary judgment standard given that he reviewed documents outside the record. We disagree.

In ruling on a summary judgment motion, the judge must decide whether there is a genuine issue of fact or, instead, whether the moving party is entitled to judgment as a matter of law. <u>R.</u> 4:46-2(c). The motion judge must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995).

If a party relies on materials beyond the allegations in the complaint, the court should convert the motion to dismiss into one for summary judgment. Lederman v. Prudential Life Ins. Co. of Am. 385 N.J. Super. 324, 337 (App. Div. 2006) (citing Pressler, Current N.J. Court Rules, cmt. 4.1.2 on R. 4:6-2 (2006)). However, when the pleadings expressly refer to such materials, the court may consider them without converting the motion into one for summary judgment. N.J. Sports Prods., Inc. v. Bobby Bobstick Promotions, LLC, 405 N.J. Super. 173, 178 (Ch. Div. 2007).

Here, plaintiff's eighty-four-page amended complaint made substantial reference to facts related to his other lawsuits. Because the pleadings expressly referred to these facts, and plaintiff relied on them, it was not necessary for the court to convert the motion to dismiss into a motion for summary judgment. Contrary to plaintiff's assertion, the court did not apply the wrong standard of review. Nevertheless, based on our review of the record, application of the summary judgment standard would have resulted in the same outcome in favor of defendants.

Plaintiff further argues that Judge Hansbury erred in relying on the New Jersey litigation privilege to dismiss his state and federal civil rights claims and that state law privileges cannot shield defendants from his federal claims. The

litigation privilege is firmly established in New Jersey. <u>Hawkins v. Harris</u>, 141 N.J. 207, 215 (1995). Statements by attorneys, parties and their representatives made in judicial or quasi-judicial proceedings are privileged and immune from liability. <u>Erickson v. Marsh & McLennan Co.</u>, 117 N.J. 539, 563 (1990). As explained by our court,

> Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation, it is not surprising that . . . the litigation privilege has been referred to as "the backbone to an effective and smoothly operating judicial system."
>
> [<u>Peterson v. Ballard</u>, 292 N.J. Super. 575, 581-82 (App. Div. 1996) (alteration in original) (quoting <u>Hawkins</u>, 141 N.J. at 222).]

For federal claims pursuant to § 1983, trial witnesses also have immunity from being sued. <u>Rehberg v. Paulk</u>, 566 U.S. 356, 367 (2012). This is because

> [w]ithout absolute immunity for witnesses, . . . the truth-seeking process at trial would be impaired. Witnesses "might be reluctant to come forward to testify," and even if a witness took the stand, the witness "might be inclined to shade his testimony in favor of the potential plaintiff" for "fear of subsequent liability."
>
> [<u>Ibid.</u> (quoting <u>Briscoe v. LaHue</u>, 460 U.S. 325, 333 (1983)).]

23

In support of his argument that the court erred in utilizing the litigation privilege, plaintiff cites King v. Harwood, 852 F.3d 568, 587 (6th Cir. 2017), where the Sixth Circuit distinguished the litigation privilege described in Rehberg by noting that the privilege did not apply to a grand jury witness who "set the wheels of government in motion by instigating a legal action," because § 1983 claims against such officers "would be entitled only to qualified immunity rather than absolute immunity." Thus, King stands for the proposition that a complaining witness to a grand jury indictment who set the process in motion does not have absolute, but only qualified immunity. Id. at 587-88.

King can be easily distinguished because here, neither Captain Miller nor Captain Philipps were complaining witnesses and neither of them set the process in motion for Carifi I. Thus, we agree with the court that the litigation privilege gave Captain Philipps immunity from being sued for federal or state civil rights infractions as a result of his testimony or certification in Carifi I, II, or III.

Plaintiff also cites Howlett By & Through Howlett v. Rose, 496 U.S. 356, 376-77 (1990), for the notion that state law cannot provide the basis for immunity for a federal claim. But here, the court did not rely on state law to find immunity for the federal claim, but instead relied on federal law which

provides immunity from suit for a person who has testified in a § 1983 proceeding.

Likewise, plaintiff's reliance on Williams v. BASF Catalysts, LLC, 765 F.3d 306, 317 (3d Cir. 2014) is not persuasive. That case stands for the notion that "the [litigation] privilege has never applied to shield systematic fraud directed at the integrity of the judicial process." Id. at 317. As the motion court correctly found, there was no allegation here of systematic fraud directed at the integrity of the judicial process.

Next, plaintiff argues that none of his claims should have been barred by the statute of limitations because they were all based upon events that took place after August 2016 and his complaint was filed in August 2018; plaintiff concedes that the correct statute of limitations is two years. For example, plaintiff claims: defendants gave false testimony in Carifi II, but that case was not filed until September 2016; defendants made false statements in testimony and sworn certifications in Carifi I, but the trial for Carifi I occurred in September and October 2017; defendants obstructed his OPRA request in July 2017; his criminal attorney's fees accrued through January 2018; and the claims he raises concerning deletion of materials from his computer continued until December 2017. As recognized by our court:

> Every § 1983 claim is subject to the statute of limitations applicable to personal injury claims in the state where the cause of action arose. In New Jersey, that statute is N.J.S.A. 2A:14-2, which requires that a suit for personal injury be commenced within two years from the accrual of the cause of action.
>
> [Heyert v. Taddese, 431 N.J. Super. 388, 435 (App. Div. 2013) (citations omitted).]

In fact, Judge Hansbury found only two of plaintiff's claims were time-barred by the two-year statute of limitations: his claim that he was denied approximately $368,000 in retirement benefits because it accrued in April 2013 and his claim for criminal-defense attorney's fees totaling more than $700,000 because the MCPO had determined not to proceed against him by December 2014. These claims were clearly time-barred and correctly dismissed on that basis. Plaintiff's remaining claims were dismissed for other reasons, as discussed below.

Plaintiff argues that res judicata, collateral estoppel, and the entire controversy doctrine do not support the dismissal of his complaint or the denial of his motions to file supplemental pleadings. Plaintiff contends that he never raised the civil rights claims that are the subject of Carifi IV in previous litigation. However, the only example plaintiff cites of claims he has not raised previously pertain to Carifi II. For example, plaintiff argues that he never raised

a claim that his civil rights were violated because Captain Philipps provided false testimony in the Ashley Madison certification. According to plaintiff, he tried to raise that issue in Carifi II, but the judge dismissed his claim without prejudice. Thus, plaintiff asserts Judge Hansbury erred by stating that res judicata and collateral estoppel preclude his claims about that certification. Plaintiff also claims that he never raised the issue that the Township's second amended verified complaint in Carifi II contained falsely certified facts.

Contrary to plaintiff's assertion, Judge Hansbury did not hold that res judicata barred his claim with respect to the Ashley Madison certification or the second amended verified complaint in Carifi II; instead, the judge found that res judicata and collateral estoppel precluded plaintiff's claim for the $368,000 in retirement benefits because that issue was previously litigated in Carifi III. In fact, claims pertaining to the Ashley Madison certification as well as the verified complaint in Carifi II were barred because plaintiff signed an agreement releasing the Township from any claims that were part of that litigation. Settlements are contracts. N.J. Mfrs. v. O'Connell, 300 N.J. Super. 1, 7 (App. Div. 1997). Consequently, general principles of contract law apply. Ibid. One of those common law principles is that a contract, valid at its inception, is not

invalidated or eviscerated by a subsequent change in decisional or statutory law. Ibid.

> The Carifi II release "irrevocably and unconditionally" relinquished

>> any and all claims and causes of action . . . of any nature whatsoever at law or in equity . . . which the parties had, now have, or hereafter may have had against each other known or unknown arising out of the acts occurring up to and including the Effective Date of this Agreement.

The only exceptions were claims pertaining to Carifi I and III. Thus, any claims arising out of the Carifi II litigation, including plaintiff's claim that then-Captain Philipps gave false testimony in the Ashley Madison certification and swore to fabricated facts in the verified complaint, are unconditionally barred because of the release plaintiff signed. Moreover, we agree with Judge Hansbury that res judicata and collateral estoppel preclude plaintiff's claim for the withheld retirement benefits because the parties previously litigated this issue in Carifi III.

Plaintiff also argues that Judge Hansbury erred in finding that his claims were barred by the entire controversy doctrine because he tried to raise additional claims in prior litigation, but the courts rejected his attempts to do so. Plaintiff cites to his attorney's certification that other claims were "blocked" in prior proceedings, though it is unclear from the certification the nature of those

28

other claims. But those claims, whatever they encompassed, were dismissed by court orders and therefore cannot be relitigated here because, as Judge Hansbury determined, they are barred by the entire controversy doctrine, res judicata and collateral estoppel. "A judgment of involuntary dismissal or a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial.'" Velasquez, 123 N.J. at 507 (quoting Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir. 1972)).

Plaintiff argues that the entire controversy doctrine requires a plaintiff to voluntarily hold back claims, whereas here, the courts prevented him from litigating them. This argument lacks merit because, when a court dismisses a claim with prejudice, and a party does not appeal that ruling, the party is barred by res judicata and collateral estoppel from raising those claims in a future proceeding. Of course, the court must weigh economy against fairness because collateral estoppel is an equitable doctrine, Barker, 346 N.J. Super. at 565-66, but here, fairness requires that plaintiff not be permitted to raise these claims again. The only claim plaintiff argues was dismissed without prejudice is the one involving the Ashley Madison certification, but as noted, that should be precluded because of the release plaintiff signed in Carifi II.

Plaintiff also argues that Judge Hansbury misunderstood his damages claim, thinking it was limited to the attorney's fees and back pay requested in Carifi I, II and III. Instead, he argues that he is seeking compensation for injury to his constitutional rights, injury to his career, and emotional distress.

Plaintiff presented no evidence to establish a violation of his constitutional rights. Instead, he has re-hashed arguments brought in prior litigation that then-Captain Philipps fabricated evidence. Plaintiff contends that then-Captain Philipps deprived him of his constitutional rights by: falsely testifying against him, withholding his retirement benefits, and failing to conduct investigations of complaints he filed; however, these matters were the subjects of previous litigation. He also claims abrogation of his right to free speech and to engage in politics, but does not describe in what way defendants deprived him of these rights. Specifically, he claims he was denied the right to: pursue petitions; equal protection of the laws; be free from retaliation; protect his reputation; a fair trial free of fabricated evidence; be free from unlawfully being targeted for enforcement of laws; and employment. However, he does not provide facts to support these allegations. Moreover, he left his employment in 2013, so any injury to his career or his employment accrued at that point and would be time-barred.

A-5230-18

Next, plaintiff argues that Judge Hansbury erred in stating that he has no private right of action for denial of his OPRA requests. Plaintiff states he was seeking redress for the Township's interference with his right to petition MCPO for an investigation into the Township's denial of his OPRA request. The Township responds that he has a right to petition, but not a right to get whatever he wants. As explained by the United States Supreme Court:

> The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts.
>
> [Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 399 (2011).]

OPRA provides clear instruction for how a person who is denied access to a record may proceed:

> A person who is denied access to a government record by the custodian of the record, at the option of the requestor, may:
>
> institute a proceeding to challenge the custodian's decision by filing an action in Superior Court which shall be heard in the vicinage where it is filed by a Superior Court Judge who has been designated to hear such cases because of that judge's knowledge and expertise in matters relating to access to government records; or

in lieu of filing an action in Superior Court, file a complaint with the Government Records Council established pursuant to section 8 of P.L. 2001, c. 404 (C.47:1A-7).

The right to institute any proceeding under this section shall be solely that of the requestor. Any such proceeding shall proceed in a summary or expedited manner. The public agency shall have the burden of proving that the denial of access is authorized by law. If it is determined that access has been improperly denied, the court or agency head shall order that access be allowed. A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee.

[N.J.S.A. 47:1A-6.]

Thus, plaintiff did not comply with the procedure for filing a complaint for denial of an OPRA request because he did not file an action in Superior Court to be heard by a judge designated to hear OPRA cases and did not file a complaint with the Government Records Council. Instead, he filed a civil rights claim and argued that his civil rights were violated because his OPRA request was denied. The solution for a requestor who was denied is for the requestor to be granted access to the record and a possible attorney fee. Here, plaintiff improperly filed a civil rights claim for denial of his OPRA request.

Last, plaintiff argues that the court erred in denying his second, third and fourth supplemental pleadings because he was not seeking the $368,000 in

32

retirement benefits. Rather he sought compensation for violation of his equal protection rights because the Township withheld his accrued sick and vacation pay from him, but made these payments to other similarly situated retired officers. The Township points out that any claim regarding his retirement benefits accrued in 2013 and events that occurred in 2018 or 2019 when other officers retired cannot revive his stale claim. We agree. Plaintiff's claim that he was not properly compensated and that other officers were compensated cannot be resurrected here. Plaintiff's retirement benefits were the subject of Carifi III. The Law Division dismissed the complaint in that matter and we affirmed. Any arguments pertaining to those benefits belonged in that litigation. Moreover, events that happened in 2018 and 2019 have no bearing on the court's determination. Judge Hansbury correctly denied plaintiff's motions to file his second, third and fourth supplemental pleadings.

In sum, we hold that Judge Hansbury properly dismissed plaintiff's complaint for failure to state a claim upon which relief can be granted for the reasons we enumerated. We also hold that the judge correctly denied plaintiff's motions to file his second, third and fourth supplemental pleadings because those pleadings did not establish valid claims pursuant to 42 U.S.C. § 1983 and NJCRA.

A-5230-18

Plaintiff argues that it was reversible error for the motion court to deny his motion to disqualify Mr. Hanrahan because Mr. Hanrahan had a conflict of interest and did not obtain informed consent from his clients, who were adverse to each other. Because we conclude that Judge Hansbury properly dismissed plaintiff's complaint for failure to state a claim upon which relief can be granted, we need not reach this issue. Even if it was error not to disqualify Mr. Hanrahan, we conclude such error was not clearly capable of producing an unjust result and was therefore harmless. See State v. Macon, 57 N.J. 325, 338 (1971).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION